29212. HUIET, commissioner, *v.* GREAT ATLANTIC AND PACIFIC TEA COMPANY.

*A. L. Henson, Clifford Walker, Otis L. Hathcock,* for plaintiff.
*Bryan, Middlebrooks & Carter,* for defendants.

FELTON, J. The exceptions are to a judgment refusing to remand the case to the Board of Review of the Georgia Bureau of Unemployment Compensation for the taking of additional testimony, and affirming the judgment of the Board of Review denying unemployment compensation benefits to the claimant, Clarence V. Fields, the alleged employee of the Great Atlantic and Pacific Tea Company.

The claimant testified substantially as follows: "I was a meat cutter at 466 Edgewood Avenue, Atlanta, Georgia. The A. & P. Tea Company operates a store in the same building. I was laid off because of a personal disagreement with the manager of the A. & P. store in which Mr. Cross leased the market. The manager of the A. & P. store did not exercise any control over the employees of Mr. Cross. I began work with Mr. Cross in January, 1936, and stopped in the summer of 1940. I do not know how many employees Mr. Cross had during 1937. I do not know how many worked in 1938. I was employed by Mr. L. D. Cross. At the time I was engaged I did not have to consult anyone in the Tea Company regarding my employment. I understood I was employed by Mr. Cross. I was not paid under the established scale of the A. & P. Tea Company salaries. I never considered myself as an employee of the A. & P. Tea Company. None of their supervisors told me how to conduct my work. They never told me what price to charge for my merchandise."

L. D. Cross testified: "I leased space from the A. & P. Tea Company. The A. & P. manager decides when the store shall be opened and closed. We do not carry any keys. I do not buy any meats or other goods from the A. & P. warehouse. I buy them wherever I want to. I lease the market from the A. & P. Tea

Company, but I have to go under their rules; that is, you have to have the right kind of fellow working there for you, and you have to have the right kind of meat if you stay in one of their stores. They adopt rules governing the whole store, and the people who lease the market have to comply with these rules. If I had an incompetent meat cutter they would tell me to get him out and get somebody else in there. They rent the space to you and if you do not do the right thing they tell you to move out. The A. & P. Tea Company employs more than eight men. I have from three to seven employees. I have never had as many as eight employees at one time."

The supervisor of markets for the A. & P. Tea Company testified, substantially: "The only thing we do is we lease the space in our store and the only thing we ask the stores to do is to keep a sanitary market. Outside of that so far as his employees we have nothing to do with them at all. What they do, how they work, what he pays them, or anything concerning his business, we have no concern with. Mr. Cross does not consult anyone in the A. & P. Tea Company regarding his employees, as to whether they are capable or not, and whether or not they should be fired. He does his own hiring, sets his own salaries, pays his men, maintains his own prices, and buys his own merchandise. His advertising is not in conjunction with the company advertising. He maintains a separate cash register, and payments for purchases from his market are collected through his market, and the company has nothing to do with it at all. I am meat supervisor of the A. & P. Tea Company. I look after the buying of the beef, etc., and look after the markets. I call on them to see that they are operated right; that is, see that they are kept right, and take care of hiring the men. I have been in the store where Mr. Cross operates his market. I have not been in his market very much. We never take up anything with Mr. Cross, though, about the operation of his market. If I were to go into his market and find one of his meat cutters drunk, I could not do anything about it. That would be up to him. If we found anybody drunk on duty we would take it up with Mr. Cross. Mr. Cross does not carry a key to the store. Mr. Cross is governed by the general policies of the store, such as opening and closing hours, and the necessity for competent employees. The sign of the company is in front of the store, and we feel re-

sponsible for what goes on behind that sign. Mr. Cross has a sign in his market which shows: 'Owned and operated by L. D. Cross.' We carry advertising offering meats and groceries for sale. If there is any profit made from the operation of Mr. Cross's market, he gets it; if there is any loss, he sustains it. The company operates markets in stores which it owns, and keeps a complete record of the employees, hours, wages, etc., in those stores, but does not keep any record of the market of Cross. He never buys any merchandise from the company. As supervisor of markets for the company, I exercise no control over the Cross market."

The office manager of the A. & P. Tea Company testified substantially: "We rent or lease to L. D. Cross the space in the store at 464 Edgewood Avenue. The company does not employ any person in connection with the operation of the market. The market is rented for a stated fixed rental. Other than the rental, the company derives no profits from the operation of the market. The company does not undertake to assume any control over the employees of the market. It makes no contracts of employment in connection with the market. It fixes no salaries in connection with the market, nor does it fix the hours of work. The company buys none of the meat for the market. The company keeps no record of the number, names, salaries, or the hours of the employees of the market. The company does not undertake to tell Cross whom to hire or fire. The license for the operation of the market is taken out by Cross. When the A. & P. puts an advertisement in the paper it is applicable only to the markets owned exclusively by the company."

There was introduced in evidence a written lease between the A. & P. Tea Company, lessor, and L. D. Cross, lessee, dated May 1, 1938, under the terms of which certain space in a store located at 464 Edgewood Avenue was leased to Cross for the exclusive purpose of operating a meat market therein. The lease provided in part: "The rental for the space shall be at the rate of $5 a week, payable weekly in advance, to the lessor or its designated agent. The space herein leased shall be used by the lessee for the retail sale exclusively of fresh and smoked meats, fresh fish, and other items of merchandise commonly sold in first-class meat markets, and for no other purpose whatsoever, it being expressly understood that the lessee shall not handle butter, eggs, oleo, milk, cream, etc., or any

other articles of food that the lessor handles or chooses to handle in its store, whereof the leased space is a part. No slaughtering of any kind is to be done on the premises or in the space herein leased, and the lessee will conduct his market in a thoroughly clean and sanitary manner, in default of which the lessor, at its option, may declare this lease terminated and require the lessee to vacate the space. The opening and closing hours of the lessee shall correspond with the opening and closing hours of the lessor's store, and the key to the store shall be carried exclusively by the lessor. The business shall be operated in the name of the lessee, who shall keep a sign displayed on the counter or the wall, so that it will be visible to customers that the meat concession is owned and operated exclusively by the lessee. All licenses or permits to operate shall be obtained and taken out in the name of the lessee. The lessee shall protect and indemnify the lessor against any damage claims of customers or of his employees that may result directly or indirectly from the operation of the meat market or concession. It is understood that the lessor shall not hire, or control in any way, the employees of the lessee and shall not be responsible for their conduct."

The Board of Review found as follows: "The Board of Review is of the opinion that the evidence in this case does not show that the appellant exercised any control or direction over the performance of claimant's services. The Board of Review therefore finds: 1. That appellant exercised no control over claimant. 2. That claimant was an employee of the named employer, L. D. Cross. 3. That claimant's employer was not a covered employer under the Georgia unemployment compensation law. 4. That claimant did not earn qualifying wages in covered employment entitling him to benefits. 5. The decision of the appeals referee is hereby reversed and benefits denied claimant."

Section 19(h)(6)(A)(B)(C) of the unemployment compensation law (Ga. L. 1937, pp. 806, 840; 1937-1938 Ex. Sess. p. 356), Code § 54-657, provides: "Services performed by an individual for wages shall be deemed to be employment subject to this act, unless and until it is shown to the satisfaction of the commissioner that: (A) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and (B) Such serv-

ice is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and (C) Such individual is customarily engaged in an independently established trade, occupation, profession or business." It is contended by the plaintiff in error that the judgment is erroneous because the Board of Review made no findings on the questions involved in the exceptions (A) and (B) embodied in section 19(h)(6), and should have remanded the case for findings thereon, and because the evidence showed that the exceptions (A) and (B) had not been established, and other reasons.

The judgments of the Board of Review and the superior court do not show error. The evidence in this case authorizes the finding that there were no services performed by Fields for the defendant for wages. There is no evidence of subterfuge, no circumvention, no scheme not to comply with the law. The case of *Young* v. *Bureau of Unemployment Compensation, 63 Ga. App.* 130 (10 S. E. 2d, 412), is not authority to the contrary, because it was held in that case that the facts showed that the individual barbers *worked for the defendant for wages.* The commissioner's contention is that the evidence shows the relationship of employer and employee between the A. & P. Tea Company and the claimant, and that since the company failed to establish all three of the exceptions enumerated in the Code section set forth above the finding of the Board of Review was error. If the relationship of employer and employee is proved, then of course the employee would be entitled to compensation unless all three of the exceptions were also proved. In this case there was evidence to sustain only one of the exceptions. The trouble with the commissioner's contention is that the question of *control* of the alleged claimant employee was considered by the Board of Review on the primary question of whether he performed services for wages. This major premise must be established before the exceptions A, B, and C become material. Assuming for the sake of argument that the control which L. D. Cross testified about would be sufficient to show that services were performed by the claimant for wages, a fact which we do not concede, there is evidence in the record which contradicts that of Cross and the Board was authorized to accept it. It did accept such contrary evidence and found as a fact that the claimant was not a covered

employee and that he did not earn qualifying wages. Of course, if the evidence had demanded a contrary finding as to the employment for wages, the commissioner's contention would be correct.

The court did not err in affirming the findings of the Board of Review.

*Judgment affirmed. Stephens, P. J., and Sutton, J., concur.*

DECIDED FEBRUARY 12, 1942.