[No. 29395. *En Banc.* November 3, 1945.]

GEORGE J. WOLFF COMPANY et al., *Respondents*, v. E. B. RILEY, *as Commissioner of Unemployment Compensation and Placement, Appellant.*[1]

[1]Reported in 163 P. (2d) 179.

*The Attorney General, Bernard A. Johnson,* and *George W. Wilkins, Assistants,* for appellant.

*Hogan & Adams,* for respondents.

BEALS, C. J.—During the year 1940, the commissioner of unemployment compensation and placement of the state of Washington ruled that George J. Wolff Company, a corporation, and its successor, a copartnership consisting of Joel I. Wolff and others, doing business as George J. Wolff Company, were liable to assessments for contributions to the unemployment compensation fund, based upon certain business relations between the corporation and its successor and other persons. From the ruling of the commissioner, George J. Wolff Company appealed to the superior court, which reversed the commissioner's decision. From the judgment of the superior court, the commissioner appealed to this court, assigning error upon the refusal of the superior court to find that respondent was a liable employer; on the court's finding that the commissioner had misapplied the law to the facts which he found, and that his decision was either arbitrary or capricious; on the court's refusal to find that § 19 (f) (4), chapter 162, p. 611, Laws of 1937 (Rem. Rev. Stat. (Sup.), § 9998-119 [P. P. C. § 928-1]), was in full force and effect, notwithstanding the fact that § 19 (f) (4), as amended by § 16, chapter 214, p. 855, Laws of 1939 (Rem. Rev. Stat. (Sup.), § 9998-119a), was vetoed by the governor and, finally, that the superior court erred in reversing the decision of the commissioner.

We shall refer to respondents as respondent or as lessor.

Respondent has, for many years, operated a clothing and dry goods store in Aberdeen. In August, 1934, it entered into a contract, referred to in the contract as a "lease," with Herbert Wyckoff, authorizing him to operate a beauty parlor in a certain area in respondent's store.

In 1936, it entered into a similar contract with Mary and Beulah Beedon, authorizing them to sell clothing and accessories for infants in another portion of the store, to be known as "The Stork's Nest."

In 1937, it entered into a similar contract with Estelle O'Brien, authorizing her to operate a gift shop in respondent's premises, to be designated "O'Brien's Shop in Wolff's."

In 1937, respondent entered into a similar contract with Birl Adams and Edmond C. Light, authorizing them to sell ladies' and children's shoes and accessories, under the name "Wolff's Shoe Department." Messrs. Adams and Light had conducted a similar business in Aberdeen for some time prior to the agreement with respondent. After making the contract with respondent, Messrs. Adams and Light organized a corporation, to which their agreement with respondent was assigned.

All four of the contracts above referred to contained substantially the same general provisions, of which the more important are the following:

(1) Respondent "leased" a specified space within the respondent's building, with window space, to be arranged by respondent's window trimmer.

(2) The leases to continue as long as the lessee should comply with all of the provisions and conditions of the lease, subject to the right of either lessor or lessee to cancel the lease upon sixty days' written notice.

(3) The rent to be a certain percentage of the lessee's sales, save that Messrs. Adams and Light were to pay not less than an amount fixed by the contract.

(4) The rented space to be used only for the designated purpose.

(5) The lessor agreed to furnish a portion or all of the fixtures to be used by lessees, to be of the same general type

of the fixtures used by lessor. Lessor also agreed to furnish, without charge, heat, electric current, light bulbs, janitor service, delivery and wrapping service, sales books, cash register service, and telephone service between departments and for outside calls.

(6) Lessees agreed to keep an accurate account of all cash sales and to turn the cash and sales slips over to lessor at the close of each day. On Tuesday of each week, the slips and cash, less the percentage for the agreed rent, to be returned to the lessees, respectively.

(7) All sales on credit to be accurately entered on lessor's books and administered by lessor. Credit sales to be subject to approval by lessor's credit department, and approved and guaranteed by lessor. All amounts collected by lessor on lessees' credit sales to be turned over to lessees on the fifteenth day of the month following the sale, less the percentage for the agreed rental.

(8) The lessees agreed to comply with and strictly adhere to all rules, regulations, and policies which the lessor followed with relation to the conduct of its own business, and specifically agreed that their sales and customer policy should be subject to the direction and control of the lessor; that lessees' employees should be subject to and comply with the rules, regulations, and policies of the lessor, which the lessor prescribed and followed with respect to its own employees concerning their demeanor, attitude, and conduct, and the lessees specially agreed that they would, for the duration of this lease, comply with prevailing rules, regulations, customs, and agreements with relation to wages, salaries, hours, and conditions of employment with respect to employees in the same or similar lines of endeavor as those of the lessees.

(9) Each lessee agreed to maintain insurance covering his fixtures and merchandise, and to maintain liability insurance to protect all persons passing through the leased premises, and to protect lessor against claims which might be asserted against lessor.

(10) Lessees agreed to carry on their respective operations pursuant to the established custom of lessor's business, and that all lessees' advertising, the amount of which to be at lessees' discretion, should be subject to lessor's approval; lessees to have the benefit of any special advertising rates accorded to lessor. The lessees agreed to co-operate with lessor in the matter of advertised store-wide sales, special offerings, spring or fall openings, seasonal offerings and displays, and in all other similar matters, to the end' that the entire premises should operate as a unit as nearly as possible.

(11) Lessees agreed to comply with all laws, and to pay all taxes which might be due from them.

(12) All purchasers of merchandise by lessees to be made in their respective names and for their own accounts, lessees agreeing to meet all obligations incurred by them promptly and in due course of business.

The leases contained other provisions, but the foregoing cover the principal matters agreed to by the parties.

The commissioner levied an assessment against respondent for the period between June 8, 1939, and August 24, 1940, on account of the businesses conducted on respondent's premises by the four lessees above referred to, demanding from respondent unemployment contributions in the sum of $413.26. Respondent appealed from the commissioner's ruling to the appeal tribunal, which held that respondent was liable for the assessments levied. From this ruling, respondent appealed to the superior court, as above stated.

Appellant commissioner vigorously contends that the businesses conducted by the four lessees, above referred to, in the respective portions of respondent's premises, are actually departments of respondent's store, and that lessees and their employees are, in fact, employees of respondent, and that respondent is liable for the assessments levied, under Rem. Rev. Stat. (Sup.), § 9998-119 (g) (1) (5) (i) (ii) (iii) [P. P. C. § 928-1, § 19]. Respondent argues, on the contrary, that each lessee is conducting his own independent business for his own profit, bears his own losses, buys and

pays for his own merchandise, hires and discharges his own employees, and pays all expenses of conducting his business, paying to respondent the agreed rental, based upon a percentage of his respective gross sales, regardless of whether he earns a profit or suffers a loss.

The first question to be determined is whether each so-called "lessee" was, in fact, in the "employment" of respondent, or was hired by respondent for a remuneration. For the purpose of this opinion, we consider each lessee an individual, disregarding the fact that one was a Washington corporation.

Respondent accepts without challenge the facts as found by the department, but contended before the superior court, and contends here, that the officers of the department erred in concluding from the facts found that respondent was liable for the assessments levied.

The case, then, is to be here determined upon the facts found by the commissioner.

The statutory provision upon which appellant relies and pursuant to which, as construed by the commissioner, the department levied the assessment against respondent is Rem. Rev. Stat. (Sup.), § 9998-119 (g) (1), (5) (i) (ii) (iii), which reads as follows:

"§ 9998-119 (g) (1) 'Employment,' subject to the other provisions in this subsection, means service, including service in interstate commerce, performed for wages or under any contract of hire, written or oral, express or implied.

"(5) Services performed by an individual for remuneration shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the director that:

"(i) Such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and

"(ii) Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprises for which such service is performed; and

"(iii) Such individual is customarily engaged in an independently established trade, occupation, profession or

business, of the same nature as that involved in the contract of service."

Rem. Rev. Stat. (Sup.), § 9998-119a (m) [P. C. § 6233-317], defines wages and remuneration as follows:

"(m) 'Wages' means the first three thousand dollars of remuneration payable by one employer to an individual worker for employment during any calendar year. 'Remuneration' means all compensation payable for personal services, including commissions and bonuses and the cash value of all compensation payable in any medium other than cash. . . ."

The question to be determined, then, is the application of the above-quoted sections of the statute to the admitted facts.

In the case of *Henry Broderick, Inc. v. Riley,* 22 Wn. (2d) 760, 157 P. (2d) 954, we said:

"It may be that we have not been as definite as we might have been in setting out the steps to be followed in determining whether or not one was in 'employment' under the act. In order to clear up any possible misunderstanding that may now exist, we now state, after a consideration of the statute, our own cases, and other authority, that in making the initial determination of whether or not one is in employment under the act, the first question to be determined is whether, under the facts, such one performed personal services for another for wages, or remuneration, or under a contract of hire. Such a contract of hire contemplates a relationship whereby the employee furnishes personal services to his employer for wages or remuneration to be paid by such employer. If this question be answered in the affirmative, then under the act such one is in employment. If this question be answered in the negative, such one is not in employment under the act. If the question be answered in the negative, then Rem. Supp. 1943, § 9998-119g (5), has no application and is not to be considered. If the question is answered in the affirmative, then such person is in employment under the act unless excluded from its operation by reason of having met the tests prescribed by § 9998-119g (5)."

This principle was applied in the case of *Seattle Aerie No. 1, Fraternal Order of Eagles v. The Commissioner of Unemployment Compensation and Placement,* 23 Wn. (2d)

167, 160 p. (2d) 614. In the case last referred to, we cited the opinion of the court of appeals of Georgia in the case of *Huiet v. Great Atl. & Pac. Tea Co.,* 66 Ga. App. 602, 18 S. E. (2d) 693, quoting the following from the opinion of the Georgia court:

" 'If the relationship of employer and employee is proved, then of course the employee would be entitled to compensation unless all three of the exceptions were also proved.' "

In the case at bar, the first question to be decided is whether or not, under Rem. Rev. Stat. (Sup.), § 9998-119 (g), *supra,* the relationship of employer and employee existed between respondent and the lessees. If this question is answered in the negative, the provisions of Rem. Rev. Stat. (Sup.), § 9998-119 (g) (5) (i) (ii) (iii), above quoted, need not be considered.

This court has several times considered questions concerning the existence of conditions which do or do not constitute employment under the act. Many of these cases are not here in point, but some of them should be noticed.

In *McDermott v. State,* 196 Wash. 261, 82 P. (2d) 568, it was held that barbers operating pursuant to an oral agreement in a shop owned and conducted by the proprietor, under an arrangement whereby the earnings of each barber were divided between himself and the proprietor on a percentage basis, were employees, within the statutory definition. We held that the so-called oral lease agreements in fact constituted contracts of service within the meaning of the act.

In *Mulhausen v. Bates,* 9 Wn. (2d) 264, 114 P. (2d) 995, it was held that a salesman, who received a commission upon each sale, which he deducted from the purchase price before remitting to his principal in Portland, Oregon, was an employee under the act. It appeared that the Oregon firm was, in fact, the vendor who sold to the consumer in Washington, and that the money which the salesman retained belonged to the vendor and constituted wages for personal service rendered.

In *State v. Goessman,* 13 Wn. (2d) 598, 126 P. (2d) 201,

we held that the proprietor of a barber shop, who was himself a barber, was, in fact, the employer of barbers working in his shop, in spite of a purported contract of lease between the proprietor and each individual barber. Clearly, the latter received "remuneration" from the proprietor, within the meaning of the definition of the word "wages" found in Rem. Rev. Stat. (Sup.), § 9998-119a (m).

In the case of *Henry Broderick, Inc. v. Riley*, 22 Wn. (2d) 760, 157 P. (2d) 954, we held that the Broderick corporation was not an employer under the act. In the course of the opinion, we said:

"In the instant case, an association was formed between appellant and these brokers for the mutual benefit of both. What term the parties may have applied to the relationship is not binding upon us. Appellant contributed to such enterprise certain office facilities, and the brokers contributed their services. Each party, for his contribution to the enterprise, was to receive half of the commission coming in from the sale of real estate as the result of their joint efforts. The half of the commission to which the broker was entitled upon completion of the deal, never was intended to and never did become the property of the appellant. It was the property of the broker from the time it was earned, and was so considered by both parties. Appellant never agreed to pay and never did pay the brokers any wages or remuneration as those terms are defined in the statute, and was not in fact an employer of these brokers under the act, nor was the contract here involved a contract of hire."

The cases of *Curtis v. Riley*, 22 Wn. (2d) 951, 157 P. (2d) 975, and *Seattle Aerie No. 1, Fraternal Order of Eagles v. Riley, supra,* are to the same effect.

The first question to be here determined is whether, under the agreements between respondent and the four parties above named, respondent was constituted an employer of those persons within the meaning of the act here in question. It is not necessary that the exact nature of their relationship be determined. If, under the contracts, respondent did not become an employer, and if the other parties were not hired by it or working for it for remunera-

tion, then the exact relationship with the so-called lessees is unimportant.

We are convinced that the relationship of employer and employee did not exist between respondent and the lessees. Each of the latter was conducting his own business, not for respondent, but for himself. Each financed his own business, bought his own merchandise, paid his own employees and other costs of operation, save those referred to in the lease, as above set forth. Each was engaged in business for his own profit and was prepared to meet, from his own resources, any losses which he might sustain.

It appears that each lessee had engaged in an entirely independent business of the same sort before entering into any agreement with respondent. After the agreement with respondent, each one still continued to conduct his own business for his own profit, subject only to certain restrictions which he voluntarily assumed. It does not appear that respondent operated a department store. The record is to the contrary. By agreement with the lessees, respondent did not divide a business which it had heretofore conducted, nor did respondent thereby enter into a department store business. Lessees did not obligate themselves to invest in the business any particular sum or to keep their stock of merchandise up to any particular standard. They paid, hired, and discharged their employees without any control on the part of respondent, either as to number or personnel. Respondent was not interested in the setting up of yearly balances by the lessees, whose complete control of their respective businesses was limited only by the provisions of their agreement with respondent.

An arrangement which would not have constituted a relationship of employer and employee prior to the enactment of the unemployment compensation act cannot become such a relationship simply because of the enactment of the legislation referred to.

The fact that respondent, in addition to leasing floor space to the lessees, agreed to furnish certain particular

services and imposed enumerated restrictions upon the lessees, as set forth in the agreements, did not change the essential character of the contracts, and, for the purposes of the statute, create an employer-employee relationship. The conditions of the leases did not vest respondent with any essential control over the lessees in managing their respective businesses.

The fact that each party under the contract could terminate the relationship by giving sixty days' notice has no bearing upon the question here presented. Upon giving the notice, the lease would be terminated in accordance with the contract, but the lessee would have the right to remove his merchandise and conduct his business elsewhere.

As the rent was to be determined by an agreed percentage of sales, respondent necessarily had the right to exercise a careful check on the amount of sales, and the provision of the contract which required that each day's cash receipts be turned over to respondent, to be returned to the lessee after deduction of the rent, nowise gave respondent any control over the lessee's business.

That respondent was given the right to control the giving of credit by the lessees and assumed responsibility for the collection of the accounts was a natural arrangement, having due regard for the fact that respondent and lessees would undoubtedly, in many instances, deal with the same customers.

It appears from the departmental findings that

"The physical set-up of the store premises is such that all departments appear to be part of the petitioner's establishment. Except in the Stork's Nest there is nothing to indicate that any of the departments are operated as a business independent of the Wolff Company."

While this situation might be important in connection with other circumstances, it presents nothing inconsistent with a nonemployer relationship between respondent and the lessees. *Magruder v. Yellow Cab Co.*, 141 F. (2d) 324.

We hold that the contracts between respondent and the lessees did not result in placing lessees in the employ-

ment of respondent; nor by the contracts were the lessees to perform any service for respondent for wages or under any contract of hire. Neither did any of the contracts bind any lessee to perform any service for respondent for remuneration. The lessees owned, operated, and conducted their own independent business establishments, and neither they nor their employees were in the employment of respondent.

In view of the conclusion which we reach upon this phase of the case, paragraphs (i), (ii), and (iii) contained in paragraph 5 of the statute above quoted, need not be considered.

Finally, appellant assigns error upon the refusal of the trial court to hold that respondent and the lessees constituted an "employing unit" within the provisions of § 19 (f) (4), chapter 162, p. 611, Laws of 1937, Rem. Rev. Stat. (Sup.), § 9998-119 (f) (4), or within the amendment to § 19 (e) to the statute quoted, found in § 16, chapter 214, p. 855, Laws of 1939, Rem. Rev. Stat. (Sup.), § 9998-119a (e).

In this connection, appellant cites the opinion of the court of appeals of Georgia in the case of *Union Dry Goods Co. v. Cook*, 71 Ga. App. 708, 32 S. E. (2d) 190. The state revenue commissioner sought to recover from the Union Dry Goods Company contributions levied pursuant to the unemployment compensation act of Georgia. It was held that, while the Dry Goods Company was not an employer within the meaning of the act, under the facts of the case it was an "employing unit" and for that reason was liable for the assessments levied.

It appeared a department store operating with over twenty departments entered into a contract whereby it turned over a specific department to one who agreed to pay as "rent" a designated percentage of gross sales. It appeared that, while the agreement between the parties bears some similarity to the contracts between respondent and the lessees in the case at bar, there are some very important differences between them. The person occupying a situation analogous to the lessees in the case at bar agreed

to allow a discount of ten per cent in favor of employees in the department store and agreed to maintain an experienced and competent person in charge of the department. The dry goods company reserved the right to discharge any person employed by the lessee in case the behavior or conduct of such employee should be detrimental to the business of the lessor, the lessor to be sole judge in such a case. The lessee agreed to keep his stock at all times up to standard requirements with merchandise of kind and class in keeping with other departments of the store. The lessor was granted the right of access to premises covered by the contract.

The differences between the contract which was construed by the Georgia court and the contracts in the case at bar are such as to render the decision of the Georgia court that the dry goods company was an employing unit not in point here. The agreements before the court in the Georgia case gave the party in the position occupied by the respondent here considerably more authority and control over the conduct of the business of the lessee than respondent enjoyed under the contracts now before us.

Appellant also cites as an additional authority the opinion of the chancellor of the chancery court of Nashville, Tennessee, released May 21, 1945, in the case of *Levy's Ladies Toggery, Inc. v. Bryant, Commissioner, etc.*

It appears from a copy of the opinion which has been filed herein that the action was brought to recover unemployment compensation taxes paid by the complainant under protest covering the employees of a "leased department" maintained in the complainant's store premises.

The chancellor dismissed the action, holding that the case of *Union Dry Goods Co. v. Cook* decided by the court of appeals of Georgia, *supra*, was directly in point. It appears that the contract in question very closely followed the contract which was before the Georgia court of appeals. The case is not closely in point here.

■ We hold that under the facts shown respondent was

not an "employing unit" within the provision of the statute last above referred to.

The judgment appealed from is affirmed.

MILLARD, STEINERT, ROBINSON, SIMPSON, JEFFERS, and GRADY, JJ., concur.

MALLERY, J. (dissenting)—Not being able to lend my assent to the method of applying the statute to the facts that was followed in this case, for the reasons as stated in my dissent to *In re Coppage, post* p. 968, 163 P. (2d) 140, I dissent.

BLAKE, J., concurs with MALLERY, J.

[1]Reported in 163 P. (2d) 167.