31349. HUIET, Commissioner, *v.* BRUNSWICK PULP & PAPER COMPANY.

DECIDED SEPTEMBER 12, 1946. REHEARING DENIED OCTOBER 3, 1946.

*Clifford Walker, J. Benton Evans,* for plaintiff.

*Reese, Bennet & Gilbert,* for defendant.

PARKER, J. In a very thorough and elaborate opinion, comprising more than 25 pages, the trial judge set forth certain findings of fact and conclusions of law, in holding that the defendant was not liable for the payment of the unemployment-compensation taxes claimed by the plaintiff. We think that the decision of the trial court was correct and that the judgment overruling the plaintiff's motion for new trial should be affirmed. Some of the provisions of the Unemployment Compensation Act should be construed strictly as a taxing statute (*Jeffreys-McElrath Mfg. Co.* v. *Huiet,* 196 *Ga.*

710, 718, 27 S. E. 2d, 385, 150 A. L. R. 1200), and we think that this rule of construction should be applied in the present case.

Two theories on which liability for the tax is asserted are presented by the record. The plaintiff contends, in the first place, that the defendant is liable for the taxes or contributions, claimed by the plaintiff under the general provisions contained in the Code (Ann. Supp.), § 54-657 (h) (6), as follows: "Services performed by an individual for wages shall be deemed to be employment subject to this Chapter, unless and until it is shown to the satisfaction of the commissioner that: (A) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and (B) Such service is either outside the usual course of business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and (C) Such individual is customarily engaged in an independently established trade, occupation, profession, or business."

The second contention of the plaintiff is that, if the pulpwood operators or suppliers are independent contractors, a special provision of the act applies, namely: Code (Ann. Supp.), § 54-657 (f), which provides in effect that, when an employing unit contracts with another for work that is a part of its usual business, the employees of the contractor while engaged in such work are to be deemed employees of the employing unit for all purposes of the act. If the employing unit shall become liable for and pay contributions on account of such employees, it may recover the same from such contractor; and if the contractor is himself an employer within the meaning of the act, he alone is liable for such contributions on account of his employees.

As to the first of these contentions, that is, that the defendant is liable under the general provisions referred to above, the plaintiff devotes about 40 pages of his most excellent brief. He discusses with much earnestness and sincerity the meaning of the terms "employment" and "wages" as used in the act. He discusses in a skilful manner the meaning and scope of the so-called "ABC tests," under the Code (Ann. Supp.), § 54-657 (h) (6), as quoted above. All of the arguments respecting the application of these provisions of the act must be predicated on a relationship of employer and em-

ployee between the defendant and the workmen involved. In other words, if the defendant purchased from pulpwood operators, producers, or suppliers products in the form of pulpwood sticks harvested by workmen of the operators, producers, or suppliers, such workmen would not necessarily be employees of the defendant. The application of the first proposition relied on by the plaintiff presupposes a relationship of employer and employee between the defendant and the workmen of the operators, producers, or suppliers. If such workmen were employed by persons other than the defendant, who merely sold the harvested products to the defendant, they would be servants or employees of their employers and not of the defendant, unless their employers were independent contractors engaged in work which was a part of the usual business of the defendant. The trial judge found as a matter of fact "that the employees of the suppliers here under consideration have not rendered services for remuneration for the defendant, but that such services were rendered for the suppliers and in the operation of the business operated by the suppliers;" and found as a conclusion of law "that employees of the suppliers are not employees of the defendant within the purview and intendment of the Unemployment Compensation Act of this State." These findings of fact and conclusions of law were authorized by the evidence. Therefore the principles announced and applied in *Huiet* v. *Great Atlantic & Pacific Tea Co.*, 66 *Ga. App.* 602, 607 (18 S. E. 2d, 693), apply to this case. In that case this court said: "If the relationship of employer and employee is proved, then of course the employee would be entitled to compensation unless all three of the exceptions were also proved. . . This major premise must be established before the exceptions A, B, and C become material." All of the arguments of the plaintiff respecting the "ABC tests" become inapplicable when the rule stated is applied to the facts of this case, as it must be, under our construction and interpretation of the law. The contention that the defendant exercised a degree of direction and supervision over the work performed by the employees of the suppliers, and had the right to "hire and fire" such employees for improper cutting of the timber, and furnished power saws and trucks to be used in connection with the work performed by such workmen, and had the right to terminate contracts with suppliers at any time, and other contentions made by the plaintiff respecting control over the workmen, are with-

out merit in a consideration of the case on appeal, since the court was authorized to find that the workmen were not employees of the defendant. In other words, as the evidence authorized the finding that the workmen involved were not employees of the defendant, all arguments based on evidentiary facts to the contrary are submerged under the "any-evidence" rule, by which this court is bound.

The large number of cases from other jurisdictions, which seem to be in point on the question of supervision and control as evidencing a relationship of employer and employee, are not applicable, as that relationship was found by the court not to exist. The cases of *Love Lumber Co.* v. *Thigpen,* 42 *Ga. App.* 83 (155 S. E. 77), *Home Accident Insurance Co.* v. *Daniels,* 42 *Ga. App.* 648 (157 S. E. 245), *Ocean Accident &c. Corp.* v. *Hodges,* 34 *Ga. App.* 587 (130 S. E. 214), *Liberty Lumber Co.* v. *Silas,* 49 *Ga. App.* 262 (175 S. E. 265), and other like cases from this court, dealing with the Workmen's Compensation Law, where the evidence showed clearly a relationship of employer and employee, are likewise not applicable. The ruling in *Young* v. *Bureau of Unemployment Compensation,* 63 *Ga. App.* 130 (10 S. E. 2d, 412), that the exceptions A, B, and C, under the section defining services which are subject to the act, are stated conjunctively and not disjunctively, and that all three of the elements stated in the exceptions must be established to exempt an employer working an individual for wages from the act, is not applicable or pertinent in the instant case. That particular point is not involved in the case at bar. The holding in the *Young* case that, when it appeared therein that the individuals worked for the defendant for wages, they came under the act unless the exceptions were proved, is not applicable here because the facts are different. Assuming without deciding that such employees may be under the act by reason of their relationship to their employer, the pulpwood supplier, it does not follow that they are under the act as employees of the defendant, unless the supplier is an independent contractor for the doing of work that is a part of the usual business of the employing unit. In that event, the employees of the independent contractor would be deemed to be employees of the employing unit for the purposes of the act. This is the point made by the plaintiff in his second contention, and we now come to its consideration.

The plaintiff says in his brief that, if this court should determine

that the workers involved are not covered employees of the defendant under the general provisions of the unemployment compensation law, the special provisions of the act contained in the Code (Ann. Supp.), § 54-657 (f), referred to above and relating to independent contractors, should be applied, and these workers would be entitled to compensation. The value of this contention depends entirely on whether the work of the independent contractors was a part of the "usual trade, occupation, profession, or business," of the employing unit (the defendant) in this case. The trial judge pointed out, in his very clear and comprehensive written decision, that whether or not the supplying of pulpwood to the mill of the defendant constituted a part of its usual business was a question of fact, and could be determined only by an inquiry into the usual, chosen, and customary method employed by the defendant in the operation of its business. In *Jeffreys-McElrath Mfg. Co.* v. *Huiet,* supra, it was held that this question was ordinarily one of fact. The mere fact that a commodity is essential and necessary in the operation of a business does not mean that the supplying of it is a part of the business. It may be admitted that pulpwood is a commodity essential to the operation of the defendant's business, but it does not necessarily follow that the work of supplying the mill with pulpwood is a part of the usual business operated by the defendant. It appears that about 86 percent of all the pulpwood used at the defendant's mill since it has been in operation was purchased from pulpwood suppliers under circumstances where the defendant admittedly was not liable for unemployment-compensation taxes on the earnings of the employees of the suppliers. Although it appears that the defendant has regularly used employees in protecting its timber from fire, in reforestation work on its lands, and in doing certain experimental work designed to test the utility of certain operational machinery on the market, using the timber cut for this purpose as pulpwood at the plant, and has at times had these workers cut a sufficient amount of pulpwood timber from its own lands to meet a temporary emergency—there was ample evidence to authorize the finding of the trial judge that "the service of supplying its mill with pulpwood does not constitute any part of the business operated by the defendant." It may be said also that the evidence authorized the finding that "the usual, customary, and

chosen method in supplying its mill with pulpwood was to purchase the same from pulpwood suppliers engaged in that business."

For the reasons pointed out by the trial judge in his decision, several foreign cases from Arizona, Virginia, South Carolina, and other States, cited by the plaintiff, are not applicable, because they differ substantially on their facts from the case at bar; but a recent Georgia case cited by counsel for both sides does seem to be in point. See *Jeffreys-McElrath Mfg. Co.* v. *Huiet,* supra. In that case the company was in the business of processing and selling lumber and lumber products. It owned and operated a sawmill and a planing mill. Rough lumber was an essential commodity in the operation of the company's business. It owned or held under lease large tracts of timbered lands acquired for the specific purpose of supplying its plant with lumber. It received its entire supply of lumber from timber standing on lands that it either owned or held under lease. The process of converting the standing trees into lumber included the felling of the trees, the sawing of the trees into logs, the hauling of the logs to the mill, the sawing of the logs into lumber, and the hauling of the lumber to the finishing plant or mill of the company. All of these services, except the processing of the lumber in the mill of the defendant, were performed by contract with third persons, some of whom performed only one service while others performed two or more. The Supreme Court held that all of these operations and services, except the hauling of the rough lumber from the mills of the contractors to the plant of the company near Macon, were parts of the usual business operated by the company, but that such hauling "would constitute no part of the defendant's usual business within the meaning of the statute."

We think that this ruling, in the light of the facts found and determined by the judge in the present case, is controlling as to the second contention of the plaintiff. The court found as a matter of fact—and we think that the evidence authorized such finding—that "the sale of timber (stumpage) by the defendant to the suppliers for pulpwood purposes and the sale of pulpwood by the suppliers to the defendant are bona fide transactions and are made in due course of trade." The plaintiff expressly disclaimed the charging of any fraud to the defendant, although the arrangement whereby the defendant sold stumpage rights to the suppliers, and then purchased from them the pulpwood sticks harvested by them, is

described as "notably unusual and quite unique." The court properly concluded as a matter of law that the pulpwood suppliers were independent contractors engaged in the operation of independently established businesses; and that the service of supplying the defendant's plant with pulpwood did not constitute a part of the usual business operated by the defendant. Therefore the services rendered by the employees of the independent-contractor suppliers were not a part of the usual trade, occupation, profession, or business of the defendant, and such workmen were not employees of the defendant under the independent-contractor provisions of the act.

The court did not err in deciding the case in favor of the defendant and in overruling the plaintiff's motion for new trial.

*Judgment affirmed. Sutton, P. J., and Felton, J., concur.*