## 34391. SARAH COVENTRY, INC. v. CALDWELL.

MARSHALL, Justice.

Certiorari was granted to review the decision of the Court of Appeals in *Caldwell v. Sarah Coventry, Inc.,* 147 Ga. App. 611 (249 SE2d 654) (1978). The judgment of the Court of Appeals is reversed.

The specific issue to be determined here is: who are "employees" within the meaning of the Employment Security Law (Code Ann. Ch. 54-6; Ga. L. 1937, p. 806 et seq.)?

The background of the case, which is set forth fully in the Court of Appeals opinion, is, briefly, as follows: The Superior Court of Fulton County reversed the decision of the Employment Security Agency. The superior court held that "fashion show directors" employed by Sarah Coventry were not employees who perform services for wages, within the meaning of Code Ann. § 54-657 (h) (6) (Ga. L. 1937, pp. 806, 840; as amended), so that Sarah Coventry was not liable for unemployment insurance tax. The Court of Appeals reversed the judgment of the superior court, thereby reinstating the agency's holding of liability for the tax.

1. The trial court's holding was based on the finding that under the facts and terms of agreement between the employer and employee, the status of the individual

fashion show director, *"when viewed in light of common law principles,* is that of an independent contractor and not that of an employee." (Emphasis supplied.) This finding has some support in a line of cases which hold as follows — in determining whether an individual comes within the scope of the Employment Security Law, it must be ascertained whether "wages" were paid; this in turn must be determined by whether the status of the individual, *when viewed in the light of common law principles,* was that of employee, rather than that of independent contractor. This major premise must be established before the "A, B, C" exceptions of § 54-657 (h) (6) become material. See, e.g., *Williamson v. Modern Homes Const. Co.,* 114 Ga. App. 340 (151 SE2d 488) (1966); *National Trailer Convoy v. Undercofler,* 109 Ga. App. 703 (137 SE2d 328) (1964); *Meakins v. Huiet,* 100 Ga. App. 557 (112 SE2d 167) (1959), stating on p. 559, that "for the term 'wages' to apply there must be an employer and employee relationship." *Huiet v. Great A. & P. Tea Co.,* 66 Ga. App. 602, 607 (18 SE2d 693) (1942).

On the other hand, there is another line of cases, exemplified by *Moore v. Williams,* 95 Ga. App. 309, 310 (97 SE2d 718) (1957), which hold that " 'It makes no difference whether the relationship between the parties was one of employer-employee or the "dealers" were independent contractors. The test, and the question here for decision, is whether the status between the parties falls within the meaning of employment *as defined by the act. Young v. Bureau of Unemployment Comp.,* 63 Ga. App. 130, 137 (10 SE2d 412).' *McNeel, Inc. v. Redwine,* 90 Ga. App. 345, 347 (83 SE2d 33)." (Emphasis supplied.) In *Redwine v. Refrigerated Transport Co.,* 90 Ga. App. 784, 787 (84 SE2d 478) (1954), the court first determined that the defendant in fi. fa. was an "employing unit" within the purview of the statute.[1] The court then ascertained that the remuneration of the individuals in question came "within the definition of wages *contained in the statute."*[2] (Emphasis supplied.) The court then made the

[1]Code Ann. § 54-657 (f).

[2]" 'Wages' means all remunerations for personal services, including commissions and bonuses and the cash

determination that the services constituted "employment," again under the statutory definition.[3] Finally, employment being presumed by the above criteria,[4] the "A, B, C" tests of § 54-657 (h) (6) were applied.

This court has not had many occasions to pass on this issue. In *Zachos v. Huiet,* 195 Ga. 780 (25 SE2d 806) (1943), although the court looked at the relationship between the parties, our reading of the opinion does not convince us that the statutory definitions of "employment" and "wages" were not utilized, especially since such definitions were referred to specifically in the opinion. Further indication of the line of cases this court has approved is the fact that applications for certiorari were denied in the cases of *Moore,* 95 Ga. App. 309, supra; *Refrigerated Transport Co.,* 90 Ga. App. 784, supra; and *McNeel,* 90 Ga. App. 345, supra.

This line of cases comports with public policy as well as the principles of statutory construction. "The Employment Security Acts, being remedial in character, are to be given a liberal construction." *Dalton Brick &c. Co. v. Huiet,* 102 Ga. App. 221 (1) (115 SE2d 748) (1960). "In the construction of a statute the legislative intent must be determined from a consideration of it as a whole. . . The construction of language and words used in one part of the statute must be in the light of the legislative intent as found in the statute as a whole." *Williams v. Bear's Den, Inc.,* 214 Ga. 240, 242 (104 SE2d 230) (1958) and cits. Thus, since § 54-657 (n) defines "wages," and does so without reference to the status of the parties (i.e., employer-employee versus independent contractor), the statutory definition of "wages," rather than common-law

---

value of all remuneration paid in any medium other than cash. . ." (subject to six exceptions not here relevant). Code Ann. § 54-657 (n).

[3]Code Ann. § 54-657 (h).

[4]"Services performed by an individual for wages *shall be deemed to be employment* subject to this Chapter, unless and until it is shown to the satisfaction of the commissioner that ... [subsections (A), (B) and (C) apply]." Code Ann. § 54-657 (h) (6).

principles, must be used for purposes of § 54-657 (h) (6). This is so, as was held in *Young,* 63 Ga. App. 130, supra, p. 137, " 'because the parties are brought within the purview of the unemployment-compensation act by a definition more inclusive than that of master and servant.' " Once the services are determined to have been rendered for "wages" as statutorily defined, then the *statutory* "A, B, C" test (not "common-law principles") is applied. Any cases contrary to this holding, including but not limited to those set forth hereinabove, are disapproved and will not be followed. Accordingly, the Court of Appeals did not err in applying the line of cases herein approved.

2. The Court of Appeals did err, however, in reversing the superior court's finding, based on the undisputed facts, that the fashion show directors were not covered by the Employment Security Act.

Although there were determinations made at two levels beneath the superior court (first by the Employment Security Agency of the Georgia Department of Labor, and then by the director of the Unemployment Insurance Service Division of the Georgia Department of Labor, following an evidentiary hearing), the superior court was the first impartial tribunal in the proceedings. The first two adjudications were made by an agency of the executive branch of government, with an interest in broadening the base of revenues from the unemployment security tax. Accordingly, if there is any competent evidence to support the superior court's conclusions of law, even if they were based upon an erroneous conception of the applicable standard (i.e., common law rather than statutory), we will uphold that court's judgment.

Since the definition of "wages" in Code Ann. § 54-657 (n), supra, is broad enough to include the commissions paid the fashion show directors in the present case, their services are deemed to be employment subject to Code Ann. Ch. 54-6 unless all three of the elements in Code Ann. § 54-657 (h) (6) (A, B, C) are established by the employing unit. See *Young v. Bureau of Unemployment Comp.,* 63 Ga. App. 130, supra, p. 136, recognizing that the matters are stated conjunctively in the statute.

(a) Element (A) of the statute is as follows: "Such individual has been and will continue to be free from

control or direction over the performance of such services, both under his contract of service and in fact."

It is clear from a reading of the contract of service here — which provides that it contains the complete agreement between the parties — that the fashion show director is not considered an employee, but rather a self-employed, independent contractor, free to carry out his or her business as salesperson in a manner of his/her own choosing. The testimony adduced upon the hearing supports the finding of freedom from control or direction. The labor commissioner and the Court of Appeals point out several facts which are urged as evidence of such control or direction, such as that the fashion show directors receive commissions from the employer, rather than from the customers; that the employer sets the terms of sales, which cannot be altered by the fashion show director; that the employer supplies to the fashion show director, sales equipment which remains the employer's property; that the purchase order forms direct a customer to address any complaints and warranty claims to the employer rather than to the fashion show director; that, if a refund is made by the employer, it is charged against the commission account of the fashion show director; and that, although no minimum order requirements are imposed, if a fashion show director is unproductive, he/she receives "encouragement" from the employer's branch manager (an admitted employee), and continued unproductivity may result in attempted confiscation of loaned sales equipment by the branch manager. These minimal controls are no more than would be imposed in a consignment relationship, however, to which this situation may be analogized.

On the other hand, absence of significant control or direction is evidenced by the facts that there are no territorial assignments or geographical restrictions, no prescribed number or time of hours to work, no minimum number of orders to be obtained, and no prohibition against selling other companies' products or holding other employment contemporaneously; that the fashion show director must furnish his/her own models and sales gimmicks, if he/she chooses to use them, and his/her own transportation; that the merchandise ordered is shipped

to the hostess at whose home the show is conducted, not to the fashion show director; that the checks for the merchandise are made payable to the fashion show director, who assumes the liability of the checks' being good, and then he/she pays the employer company; and that the two individuals directly above the fashion show director — the unit director and the branch manager — are, by contract and in fact, employees of the company, which pays unemployment tax on their earnings. The above evidence demands the finding that the fashion show director in question was free from any significant control or direction over the performance of her services, both under her contract of service and in fact, so as to establish element (A). Cf., *Babb & Nolan v. Huiet,* 67 Ga. App. 861, 866 (21 SE2d 663) (1942), involving real-estate salesmen.

(b) Element (B) of the statute is as follows: "Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed."

As to the first alternative of this element, the service was clearly not "outside the usual course of the business for which such service is performed." In construing the second alternative provision, we must give effect to the legislative intent thereof, which we deem to be to enable the employer to effectively administer the activities of the individual by limiting the area of performance of services to such areas as the employer can practically oversee and maintain some surveillance and supervision. This case is distinguishable from *Huiet,* 67 Ga. App. 861, supra, p. 866, in that, unlike the situation there, the individual here was unlimited as to territorial or geographical spheres of operation, being free to perform his/her sales activities even in other states. Accordingly, element (B) was established by the employer.

(c) Element (C) of the statute is as follows: "Such individual is customarily engaged in an independently established trade, occupation, profession or business."

The labor commissioner cites us to a Virginia case, holding that, under a similar statute, in order to meet this test it was necessary to show that the individual has a

proprietary interest in the business, something in which he has a right of continuity, which he can sell or give away, and which is not subject to cancellation or destruction upon severance of the relationship with the principal. Life & Cas. Ins. Co. v. Unemployment Comp. Comm., 178 Va. 46 (16 SE2d 357) (1941). He contends that the trade of fashion show directors does not meet this criterion, in that the relationship with the employer company has no continuity, existing only in a particular relationship and then vanishing when the connection ends, with nothing remaining in which the individual has a proprietary interest.

This court is not bound by the construction put on a similar or even an identical statute of a foreign jurisdiction by a court of that jurisdiction. Even if this construction be adopted, however, there is sufficient evidence to show compliance therewith. Under the contract, the fashion show director is free to sell the products of other companies, even of competitors of the employer company. The fact that the contract recognizes this freedom, plus the fact of the intermittent and almost casual relationship to the company, indicate that it is the common practice for such individuals to be "customarily engaged in an independently established trade, occupation, profession or business." We believe that it would be unduly restrictive to construe this provision so as to require a formal, legal organization in order to comply with it, which would exclude even a one-person occupation of salespersons. Therefore, we hold that element (C) was established by the evidence.

Accordingly, the three (A, B, C) elements having been established, the judgment of the Court of Appeals reversing the superior court's finding of no coverage under the Act, is reversed.

*Judgment reversed. All the Justices concur, except Undercofler, P. J., who concurs in the judgment only, and Hall, J., who dissents from Division 2.*

ARGUED FEBRUARY 20, 1979 — DECIDED APRIL 5, 1979.

*Jones, Bird & Howell, Alexander E. Wilson, Jr.,*

*David A. Rammelkamp, Westmoreland, Hall, McGee & Warner, P. Joseph McGee,* for appellant.

*Arthur K. Bolton, Attorney General, L. Joseph Shaheen, Jr., Assistant Attorney General,* for appellee.