## A90A2059. HUTTO v. THE STATE.
### (401 SE2d 339)

McMURRAY, Presiding Judge.

Defendant was convicted in a bench trial of the offense of criminal issuance of a bad check. She appeals, asserting the conviction was not supported by the evidence.

Reviewing the transcript of the trial, we find the following: H & M Construction Company ("H & M"), a partnership consisting of David Hutto and Evelyn McSilkey, performed work at Lake Hartwell pursuant to a contract with the "Army Corps of Engineers." Pursuant to a written contract, H & M subcontracted with Danny Wilson and Mark Milford to cut grass around the lake. Wilson and Milford were partners and they furnished the equipment and labor for the job.

Ordinarily, H & M paid Wilson and Milford in the middle of the month for work performed during the preceding month. H & M is-

sued checks to Wilson (who "would get a 1099 from H & M") and Wilson paid Milford (who "would get a 1099 from [Wilson]").

On August 9, 1986, a Saturday, Milford went to H & M's office. He heard that H & M had lost its contract with the "Army Corps of Engineers" and he wanted to be paid. At that time, H & M owed Wilson and Milford for work performed during the latter half of June and all of July.

Hutto informed Milford that he did not have any company checks but that he could give Milford a personal check. Hutto then turned to his wife, the defendant, and told her to write a check to Wilson.

The defendant was not an employee of H & M. She had no connection with H & M other than the fact that she was married to David Hutto. Nevertheless, she issued a personal check made payable to Wilson in the amount of $13,115.

According to the defendant, Hutto and a former secretary of H & M, the defendant told Milford she did not have sufficient funds to cover the check. Milford denied he was told any such thing.

Milford and Wilson telephoned the bank on Tuesday, August 12, 1986, to see if the check was good. They called back about eight or nine days later. Ultimately, four to six weeks later, the check was presented for collection. It was not honored.

In the meantime, Milford and Wilson met with Hutto and H & M's attorney to see if they could work things out. The attorney testified that he asked Milford why he would accept a check which he knew was not good and that Milford replied: "I thought it would be better to have a check than to have nothing at all." Neither Milford nor Wilson recalled the attorney's question. *Held*:

"A person commits the offense of criminal issuance of a bad check when he makes, draws, utters, or delivers a check, draft, or order for the payment of money on any bank or other depository in exchange for a present consideration or wages, knowing that it will not be honored by the drawee." OCGA § 16-9-20 (a). Did the defendant give a check in exchange for (1) a present consideration or (2) wages?

1. "Present consideration . . . means that the check must be in exchange for something of value. [Cit.]" *Griffith v. State*, 249 Ga. 19, 20-21 (287 SE2d 187). Thus, "it must be proved that the party alleged to have been defrauded suffered loss resulting from its reliance on the defendant's wrongful act as charged in the indictment." *Hamilton v. State*, 118 Ga. App. 842 (1) (165 SE2d 884). "However, the requisite of 'present consideration' may exist although goods or services are received before a check is delivered in payment, where the interval is slight and the exchange can be characterized as a single contemporaneous transaction." *Bowers v. State*, 248 Ga. 714, 715 (285 SE2d 702).

In *Griffith v. State*, supra, the defendant operated a gasoline service station. He issued three checks to Thomas Oil Company to pay for gasoline delivered to the station. One check was issued on December 12, 1978, to pay for gasoline delivered the same day. A second check was issued on January 24, 1979, for deliveries made on January 16, 1979, and January 18, 1979. The third check was issued on February 8, 1979, for gasoline delivered on February 5, 1979. The evidence demonstrated that the defendant would write checks for the gasoline if he was at the station at the time of delivery. If the defendant was not at the station, an invoice was left for him with no arrangement for payment. The Supreme Court held that the second and third checks issued by that defendant were not for a present consideration inasmuch as they did not evidence a single *contemporaneous* transaction.

We find *Griffith v. State*, supra, to be applicable to the facts of this case. The course of dealings between H & M and Wilson and Milford showed that H & M ordinarily issued a check to Wilson in the middle of the month for services performed in the preceding month. And the check in question was issued on August 9, 1986, for work performed in June 1986, and July 1986. It cannot be said that the circumstances surrounding the issuance of this check constituted a single contemporaneous transaction. *Griffith v. State*, supra; *Bowers v. State*, supra. Compare *Ledford v. State*, 184 Ga. App. 556 (362 SE2d 133); *Gilley v. State*, 182 Ga. App. 681 (356 SE2d 655).

2. The Georgia courts have yet to define the term "wages" as it appears in OCGA § 16-9-20. The Code section itself offers no definition of the term. Accordingly, we will define the term in light of common law principles, see *Sarah Coventry, Inc. v. Caldwell*, 243 Ga. 429 (1) (254 SE2d 375), bearing in mind that penal statutes must be construed strictly. *Marchman v. State*, 173 Ga. App. 257, 259 (325 SE2d 879).

In the absence of a statutory definition, the term "wages" connotes an employer and employee relationship. See *Sarah Coventry, Inc. v. Caldwell*, supra; *Meakins v. Huiet*, 100 Ga. App. 557, 559 (112 SE2d 167). Inasmuch as neither Wilson nor Milford were employees of H & M, it cannot be said that the check issued by defendant was given in exchange for wages.

3. Under the particular facts and circumstances in the case sub judice, a rational trier of fact could not have found beyond a reasonable doubt that the check issued by defendant was given "in exchange for present consideration or wages." OCGA § 16-9-20 (a). *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560); *Marchman v. State*, supra. Accordingly, defendant's conviction must be reversed.

*Judgment reversed. Sognier, C. J., and Carley, J., concur.*

328

*Charles D. Strickland*, for appellant.
*Lindsay A. Tise, Jr., District Attorney, Francis J. George, Assistant District Attorney*, for appellee.