A96A2164. AMERICAN BOOK DISPLAY v. POYTHRESS et al.
(479 SE2d 198)

JOHNSON, Judge.

The Georgia Department of Labor (DOL) determined that Joseph Guterman, who sold books for American Book Display ("ABD"), had engaged in "employment" for ABD under the Employment Security Act. This decision rendered ABD liable for contributions on Guterman's behalf to the Georgia Unemployment Compensation Fund. The decision was affirmed in an administrative appeal and by the superior court. We granted ABD's petition for discretionary review, and now affirm.

ABD is headquartered in Illinois, and has an office in Georgia. Under a contract styled "Independent Contractor Agreement," Guterman took books on consignment from ABD and sold them "direct to the consumer." Guterman was free to set the retail prices, but had to pay ABD a preset amount for each book. Guterman's only compensation was the difference between those two prices. He could return unsold books to ABD.

In most respects, the terms of the contract appear to create an independent contractor relationship. ABD did not withhold payroll taxes from Guterman's compensation or provide him with benefits such as health insurance or a retirement plan. ABD did not set his hours, provide him with customer lists, or regulate what he wore. ABD did not provide him with an office or showroom, and did not give him equipment such as phones, computers, or office supplies. Nor did ABD reimburse him for any space, equipment, supplies, travel expenses, or anything else. ABD did not prohibit Guterman from selling competitors' merchandise alongside ABD's. ABD provided some training and held some meetings, but they were not mandatory. ABD representatives could arrange for their own advertising, and were free to hire assistants if they desired to do so. The representatives were completely responsible for paying and supervising any assistants they hired, and ABD did not have the power to discharge the assistants.

The DOL concluded that Guterman had engaged in "employment," though the hearing officer's decision does not clearly explain why. The following facts are the only ones that could support the decision: (1) Each ABD representative was assigned a territory. If he

sold in another representative's territory, he had to turn the commission over to the other representative, but received no other sanction. He received full commissions for any sales in unassigned territories. (2) The usual practice was for each representative to make a weekly visit to the ABD office, but some representatives conducted all their business with ABD by telephone and delivery service. (3) Each representative was required to submit weekly inventory sheets to ABD, though sometimes representatives took longer than a week between submissions. (4) ABD would give its representatives, not the consumers, replacements for any defective merchandise. (5) A "Daily Drop Requirements" sheet signed by Guterman indicates that ABD desired a minimum volume of sales, though ABD's brief asserts that there was no minimum. There was no hearing testimony regarding this sheet. (6) Representatives were offered non-mandatory initial training, and were offered follow-up training if they had problems meeting sales goals. (7) ABD supplied some advertising materials that representatives could pass on to their customers. (8) ABD supplied some sales leads to its representatives. Of these possible supporting factors, only the first was mentioned in the superior court order affirming the administrative decision.

1. The "any evidence" standard applies to our review of the DOL's factual findings, though we may review its legal conclusions. *Holstein v. North Chemical Co.*, 194 Ga. App. 546, 547-548 (3) (390 SE2d 910) (1990).

2. The question in this case is not, as ABD frames it, whether Guterman was an "employee" or an "independent contractor." "It makes no difference whether the relationship between the parties was one of employer-employee or the [wage earners] were independent contractors. The test, and the question here for decision, is whether the status between the parties falls within the meaning of employment *as defined by the [Employment Security] Act*." (Citation omitted, emphasis in original.) *Sarah Coventry, Inc. v. Caldwell*, 243 Ga. 429, 430 (1) (254 SE2d 375) (1979); see id. at 431-432 (1). Because the statutory language controls the issue of whether ABD was liable for contributions to the trust fund on Guterman's behalf, we do not apply common-law tests to determine whether Guterman was an independent contractor or an employee. *Stuart-James Co. v. Tanner*, 259 Ga. 289, n. 1 (380 SE2d 257) (1989). Rather, under the Employment Security Act, services performed for wages are presumed to be employment unless they qualify for one of several statutory exclusions. See OCGA § 34-8-35. The Act's definition of "wages" includes all remuneration for services, including commissions, with some exceptions not relevant to this case. See OCGA § 34-8-49.

ABD does not dispute the DOL's finding that it paid Guterman wages under the Act. Instead, ABD contends that Guterman's ser-

vices qualified for two statutory exclusions from "employment."

3. ABD first contends that Guterman's services qualified for an exclusion from "employment" established by OCGA § 34-8-35 (n) (16) for the services of some carriers of printed materials. Although ABD made this argument to the DOL and the superior court, neither tribunal addressed it. This exclusion only applies if "[r]emuneration for the independent contract carrier is on the basis of the number of deliveries accomplished." OCGA § 34-8-35 (n) (16) (B). As previously noted, Guterman's remuneration was the difference between the retail price of each book and the amount remitted to ABD. There was no fixed compensation per book, and no fixed number of books per delivery. His remuneration was therefore not "on the basis of the number of deliveries accomplished," so his services did not fall under subsection (n) (16).

4. In the alternative, ABD contends it satisfied the three-part test set out in OCGA § 34-8-35 (f) (1), (2), and (3) for determining whether most wage earners' services may be excluded from "employment." The DOL hearing officer found that Guterman's services failed to satisfy subsection (2) and another unspecified part of this test. The superior court held that ABD had "failed to satisfy at least the second prong of the . . . three part test."

OCGA § 34-8-35 (f) (2) provides that a service may only be excluded from "employment" if it is performed "outside the usual course of the business for which such service is performed *or* such service is performed outside of all the places of business of the enterprise for which such service is performed." (Emphasis supplied.) The DOL hearing officer correctly found Guterman's services to be "fully within the course of the employer's business (the selling of books)," but did not address whether they were performed outside ABD's places of business. The superior court found that subsection (2) was not satisfied because "the territories were assigned by the company and for the company's own administrative purposes."

In some circumstances, a sales territory may constitute a "place of business" under the Employment Security Act. See, e.g., *Babb & Nolan v. Huiet*, 67 Ga. App. 861, 866 (21 SE2d 663) (1942), holding that the services of real estate agents were performed in their broker's place of business because they were "performed within the limits, territorially or otherwise, of the contract." Id. at 866.[1] Compare *Vocational Placement Svcs. v. Caldwell*, 168 Ga. App. 198 (308 SE2d 618) (1983), in which workers were customarily assigned tasks near their homes. There we held that the workers' services were not per-

---

[1] After *Babb & Nolan*, the legislature exempted commission real estate sales from "employment" by amending Ga. Code Ann. § 54-657 (h) (7) (M), today's OCGA § 34-8-35 (n) (9). Acts 1966, p. 141.

formed in the employer's place of business because the territorial custom was merely a convenience for the workers, not a supervisory tool. Id. at 201 (1) (b).

In this case, we need not decide whether the ABD territories were supervisory devices or served some other function. This is because the DOL hearing officer found that "[S]ales Reps report to the office weekly to pick up inventory and turn in sales receipts." Because Guterman's services for ABD included this in-office inventory pickup and sales receipt return, his services were not performed "outside of *all* the places of business of" ABD, as required by OCGA § 34-8-35 (f) (2) (emphasis supplied). This fact distinguishes our case from *Sarah Coventry*, supra, and *Vocational Placement Svcs.*, supra, because there is no indication in either of those opinions that the workers in question had regular routines that brought them into their employers' offices. Compare also *Zachos v. Huiet*, 195 Ga. 780, 782-783 (25 SE2d 806) (1943), in which the services of commission salespeople were held not to be "employment" when they sold from Florida to Maryland and were not required to report to the employer in person at any time.

Services must satisfy all three subsections of OCGA § 34-8-35 (f) in order to qualify for its exclusion from "employment," so Guterman's services for ABD do not qualify. See *Sarah Coventry*, supra at 432 (2). We therefore affirm the superior court's judgment finding Guterman's services to constitute "employment" under the Employment Security Act. "A judgment right for any reason will be affirmed." (Citation omitted.) *Darugar v. Hodges*, 221 Ga. App. 227, 229 (471 SE2d 33) (1996).

*Judgment affirmed. McMurray, P. J., and Ruffin, J., concur.*

DECIDED DECEMBER 10, 1996 —

*Ford & Harrison, Jon M. Gumbel*, for appellant.

*Michael J. Bowers, Attorney General, Jeffrey L. Milsteen, Deputy Attorney General, Susan L. Rutherford, Senior Assistant Attorney General, Kimberly B. Lewis, Assistant Attorney General*, for appellees.