37934. MEAKINS *et al. v.* HUIET, Commissioner, *et al.*

Decided October 27, 1959.

*Morgan C. Stanford,* for plaintiffs in error.

*Otis L. Hathcock, Dean J. Ratliffe,* contra.

Felton, Chief Judge. The plaintiffs in error were employees of the Atlanta plant of Armour & Company and were permanently laid off by their employer on November 21, 1958. The layoff was pursuant to a collective bargaining contract between the company and the United Packinghouse Workers of America, AFL-CIO. Under the agreement the employees received a severance allowance calculated on the basis of the length of service and rate of pay of the employees laid off. The disqualification of the plaintiffs in error based on Sec. 2(e) of the Georgia Employment Security Law (Code, Ann., § 54-610), which provides that "an individual shall be disqualified for benefits . . . for any week with respect to which he is receiving or has received remuneration in the form of (1) wages in lieu of notice" was error for the reason that the undisputed evidence showed that the employees received notice on November 3,

1958, that a permanent layoff of its slaughtering department employees and employees of allied departments would take place on November 21, 1958. The evidence also showed that the company did not consider the severance allowance as wages in lieu of notice and that the plaintiffs in error were permanently discharged and were off the company's payroll as of November 21, 1958, and that they were not expected to perform any work after November 21, 1958, and that they were not continued on the payroll, that the severance allowance as set forth in the collective bargaining agreement had been a condition of employment covering employees of the Atlanta plant since 1950, and was given to the employees in consideration of past satisfactory service and that after the date of layoff the employees lost all seniority and pension rights and that if they were ever hired again by the company they would be hired under the same conditions as any new employee without any seniority or pension rights. The bargaining agreement provides: "The amount due under this allowance shall be as follows: (1) If less than the equivalent of four weeks' pay—in one lump sum. (2) Amounts over a total of four weeks' pay—weekly instalments of full wages until the total amount is exhausted. The employee, at his option, may elect to receive such amount in a shorter period of time or in one lump sum. (3) In the event of death, any unpaid balance shall be paid to the beneficiary of the group life insurance policy." The bargaining agreement also provides: "Separation allowance—To whom paid. Separation allowances, determined in accordance with Section 19-3, shall be paid to employees having one or more years of continuous service, as defined in the vacation provisions, who are permanently dropped from the service because of a reduction in forces arising out of the closing of a department or unit of business or as a result of technological changes and when it is not expected that they will be re-employed." The judgment of the disqualification on the ground that the severance allowance was the payment of wages in lieu of notice is error. However, if the judgment is right for any reason it should be affirmed. We turn, then, to the question whether the employees are disqualified for the periods in question by reason of their having received wages after November

1, 1958. The Georgia law makes no reference to separation allowances. Code (Ann.) § 54-657 provides: "(k) 'Unemployment': An individual shall be deemed 'unemployed' in any week during which he performs no services and with respect to which no wages are payable to him. . . . (n) 'Wages' means all remuneration for personal services, including commissions and bonuses and the cash value of all remuneration paid in any medium other than cash . . . : Provided, that the term 'wages' shall not include after December 31, 1940: . . . (3) Dismissal payments which the employer is not legally required to make; . . ." A number of courts in other states have held severance pay to be wages under the facts of the cases and the laws of the particular states involved. Whether the facts of this case and the laws of the other states are similar we do not see how the severance pay in this case can be said to be wages. In the first place for the term "wages" to apply there must be an employer and employee relationship. There was none in this case after November 21, 1958. The relationship was completely terminated on that date. In a number of the cases just referred to the basis for the decision was that the relationship of employer and employee did not cease to exist until the end of the period during which the severance allowance payments would have been paid if paid by the month. Such a situation cannot be said to have existed in this case. The employees could have secured another job on November 22nd or any time thereafter without forfeiting the severance allowance. There was no condition or string attached to the severance payments or obligation to pay them such as that they would cease upon the employee's re-employment or death. There is one fact which conclusively and indisputably shows that the severance allowance was paid in respect to past factors in spite of the fact that it could be receivable in monthly payments subsequently to the termination of employment and that fact is that the allowance was due even in spite of the death of an employee even in the event any or all of the monthly instalments or a lump sum had not been paid before his death. The only thing such a fact could mean is that the payment is not related to future considerations but is made solely on ac-

count of past factors and the loss of benefits of rights previously enjoyed by the employee by reason of his length of service and the quality of it. In this view it is immaterial that the severance payments coincide with unemployment benefits. The argument that the employer will be subjected to double payment is not in our opinion acceptable. If there were any subterfuge or imposition the answer might be different. Double payment voluntarily made by an employer is certainly not against public policy and does not militate against the scheme and plan of unemployment compensation. If employers wish to avoid the so-called double obligation all they have to do is to provide in the contract that the employment of the released employee does not end until the expiration of the time when the severance allowance would expire if paid monthly, and also provide in the contract that the severance allowance must be paid only by the month and that in case of the death or re-employment of the employee the obligation to pay the remaining instalments would cease. A number of other states have reached the same conclusion we have on these questions. Below we cite first the cases and Law Reviews in accord with our conclusion that the employees are not disqualified and following them the decisions holding to the contrary. In accord with our view are: Kroger Co. *v.* Blumenthal, 13 Ill. 2d 222 (148 N. E. 2d 734); Western Union Tel. Co. *v.* Texas Employment Commission (Tex. Civ. App.) 243 S. W. 2d 217; Dubois *v.* Maine Employment Commission, 150 Me. 494 (114 A. 2d 359); Industrial Commission of Colorado *v.* Sirokman, 134 Colo. 481 (306 P. 2d 669); Keystone Mining Co. *v.* Unemp. Comp. Bd. of Review, 167 Pa. Supr. 256 (75 A. 2d 3); 100 U. of Pa. Law Review 144; 64 Harvard Law Review 681; Ackerson *v.* Western Union Telegraph Co., 234 Minn. 271 (48 N. W. 2d 338, 25 A.L.R. 2d 1063). Several unemployment departments or commissions have recently rendered similar decisions. Appeals Tribunal, Minnesota, March 25, 1955, Cudahy Packing Co.; Illinois, 1955, Wilson & Company; the South Carolina Commission, December 18, 1958, Southern Bell Telephone & Telegraph Company; Maryland, Appeals Division, Swift & Company *v.* Booth, April 2, 1959. Cases holding employees disqualified under

the facts are: Oklahoma Board of Review, decision No. 175-BR-58, October 14, 1958, Prentiss-Hall, Inc., Okla. 29, 543; In re. Phillips, 234 N. C. 453 (67 S. E. 2d 362); Brannigan *v.* Administrator, 139 Conn. 572 (95 A. 2d 798); Fazio *v.* Unemployment Compensation Board of Review, 164 Pa. Super. 9 (63 A. 2d 489), in which case the employee received a check marked "Salary for February and March"; Kalen *v.* Director of the Division of Employment Security, 334 Mass. 503 (136 N. E. 2d 257), (in which case 332 Mass. 78, 123 N. E. 2d 229, was distinguished as being one where the employer placed money for employees in an irrevocable trust fund. We can see no difference in principle between such a case and one where the employer is irrevocably obligated to make the payment even if the employee dies); Schenley Distillers, Inc. *v.* Review Board, 123 Ind. 508 (112 N. E. 2d 299); Bradshaw *v.* California Employment Stabilization Commission, 46 Cal. 2d 608 (297 P. 2d 970). The lists of cases are not intended to be exhaustive.

The court erred in affirming the judgment of the board of review which affirmed the judgment disqualifying the employees.

*Judgment reversed. Quillian and Nichols, JJ., concur.*