WESTERN ELECTRIC COMPANY, INCORPORATED, APPELLANT, v. ROBERT J. HUSSEY AND BOARD OF REVIEW, DIVISION OF EMPLOYMENT SECURITY, DEPARTMENT OF LABOR AND INDUSTRY, RESPONDENTS.

Argued March 6, 7, 1961—Decided June 30, 1961.

*Mr. Alfred L. Manson, Jr.* argued the cause for appellant (*Messrs. Pitney, Hardin & Ward,* attorneys; *Mr. Clyde A. Szuch,* on the brief).

*Mr. Sidney Reitman* argued the cause for respondent Robert J. Hussey (*Messrs. Kapelsohn, Lerner, Leuchter & Reitman,* attorneys; *Mr. Sidney Reitman,* on the brief).

*Mr. Edward A. Kaplan* argued the cause for respondent Board of Review, Division of Employment Security, Department of Labor and Industry (*Mr. Clarence F. McGovern,* attorney; *Mr. Edward A. Kaplan,* of counsel).

PER CURIAM. In this unemployment compensation case the employer appealed to the Appellate Division from an adverse determination of the Board of Review, Division of Employment Security, Department of Labor and Industry, and we certified the appeal on our motion. The question involved is whether an employee who, on layoff for lack of work, receives a "lay-off allowance" equivalent to five weeks' wages under the terms of the collective bargaining agreement, is disqualified from receiving unemployment compensation benefits for the five weeks immediately following the layoff.

The Board of Review, Division of Employment Security, Department of Labor and Industry rendered the following decision:

"The employer filed a timely appeal from a decision of an appeal tribunal (ATJ–12891–Inv.) which held that the claimant was eligible for benefits from August 18 through September 14, 1958, under a valid claim filed August 18, 1958; that he was ineligible from September 15 through November 13, 1958, eligible from November 14 through December 11, 1958, and ineligible thereafter through January 7, 1959.

The claimant and the employer appeared by counsel at hearings conducted on May 21 and June 5, 1959.

Findings of Fact:

Counsel for the parties agreed that there was no basic dispute as to the facts found by the Appeal Tribunal. Those were simply that the claimant had been employed as a central office equipment installer by Western Electric Co., Inc., for more than five years; that his last wage was $97 a week; that his last day of employment before this claim was filed was August 15, 1958; and that he was laid off on that date, for an indefinite period, because of lack of work. The employer reported the lay-off as 'permanent' but subsequently its witnesses testified that such description was erroneous, as the claimant retained seniority rights for two years after lay-off, in accordance with the terms of the collective-bargaining agreement in force at the employer's premises. At the time of lay-off, the claimant received a lump sum payment of $484, less normal deductions. That payment represented the equivalent of five weeks' pay through September 19, 1958, paid him in accordance with the terms of the bargaining agreement.

The bargaining agreement in question is that which had been entered into by Western Electric Co., Inc., and the claimant's union, The Communication Workers of America.

That agreement, in Article XXI, provides as follows:

'Layoff Allowances

1. Schedule of Allowances

Employees Laid-off shall be granted a Layoff allowance based on Term of Employment at date of such Layoff, in accordance with the following schedule, except as provided in Paragraph 3 below:'

The agreement then sets up a schedule of payments to be made at the time of layoff which provides for one week's pay for each completed year of service through the seventh year of service, and for two weeks' pay for the eighth and subsequent years of service through the fourteenth year. Thereafter, three weeks of pay is allowed for each additional completed year of service.

'2. Computation of Allowance Payments

2.1 Layoff allowance payments shall be based on the employee's established schedule of working hours or days (excluding overtime) in effect as of the date of Layoff, with a minimum of thirty-two (32) hours per week. For individual Employees whose standard schedule are less than the thirty-two (32) minimum mentioned above, the allowance shall be based on their standard schedule. The rate of pay used in such computations shall be the Employee's standard hourly rate plus night work bonus when applicable.

2.11 When An Employee's standard hourly rate has been reduced and the effective date of such reduction falls within the twenty-six (26) week period preceding Layoff, the standard hourly rate used shall be that in effect immediately preceding the reduction from the higher standard hourly rate which was effective within such twenty-six (26) week period if it is higher than the standard hourly rate in effect as of the date of Layoff.

3. Schedule of Allowance for Reemployed Employees

An Employee who has been reemployed following a period of Layoff and who is again Laid-off, shall be granted a Layoff allowance in accordance with the following:

| Continuous Service Since Date of Latest Employment | Layoff Allowance |
| --- | --- |
| Less than ten (10) years | Layoff allowance per Paragraph 1 based on Term of Employment as of the date of second or subsequent Layoff, minus net amount (i. e., amount paid to Employee less amount refunded per Paragraph 4 below) paid to Employee as Layoff allowance at time of prior Layoff or Layoffs. |

Ten (10) years or more       Layoff allowance per Paragraph 1.

Note: When an Employee's Term of Employment prior to reemployment is not credited, Layoff allowance shall be based on Term of Employment since date of such reemployment.

4. Payment of Layoff Allowance Rendered Excess by Rehiring

When an Employee has received a Layoff allowance and is subsequently rehired, and the number of weeks since date of Layoff is less than the number of weeks of Layoff allowance granted, the amount of Layoff allowance paid the Employee for the excess number of weeks shall be considered as an advance in pay by the Company and repayable through payroll deductions at the rate of ten percent (10%) of such Employee's wages.'

A claim for unemployment benefits was filed on August 18, 1958, by the claimant. He reported thereafter through September 14, 1958. He was able to work, was available for work, and sought work during that period. He obtained work on September 16, 1958, which lasted until November 12, 1958. He then reopened, on November 14, 1958, the claim initially filed on August 18, and reported for four consecutive weeks through the week ended December 11, 1958. He was able to work, was available for work and sought work actively while reporting and claiming benefits. New temporary work was obtained on December 15, 1958, which lasted until December 24, 1958. His claim was again reopened on January 8, 1959, and reporting was resumed.

The claimant's appeal to the Appeal Tribunal was an appeal from denial of benefits for the period August 18 through September 19, 1958. Benefits were allowed for other periods claimed, and the Division has not seen fit to raise any question as to the claimant's eligibility for benefits claimed for periods after September 19, 1958. The employer has not disputed the claimant's eligibility with respect to periods of the claim following September 19, 1958, and neither the Appeal Tribunal nor the Board of Review has found evidence which would cast doubt on the claimant's eligibility for periods following September 19, 1958.

The claimant performed no services for the employer during the period August 18 through September 19, 1958.

The following stipulations were made by counsel for the parties:

1. The claimant and his co-workers were laid off on August 15, 1958 because of lack of work and, as of May 21, 1959, had not yet been recalled by the employer; that the layoff was in accordance with the contract between the company and the union; that the claimant had right of recall for two years from the date of layoff; and that the claimant received a layoff allowance, so designated, pursuant to the provisions of the contract.

2. That the claimant had been hired initially on November 17, 1952; was first laid off on August 27, 1954; at that time received a layoff allowance of $62.80; was rehired June 3, 1957,

and was again laid off August 15, 1958, at that time receiving a gross layoff allowance of $484.00 from which was deducted the original lay-off allowance of $62.80, giving him a net layoff allowance of $421.20 before routine deductions.

3. That the claimant was in military service from May 19, 1955, and was discharged therefrom shortly before his rehire on June 3, 1957.

4. That the case of the claimant herein would be treated as a pilot case which would govern other, similar, cases pending on appeal.

Opinion :

The dispute here presented is narrowed by the facts and the stipulations to the single question of the claimant's right to claim and to receive benefits with respect to the period August 18 through September 19, 1958 (actually through September 14, since he discontinued reporting with September 14).

The employer contends that the payment in effect continued the claimant's employment during that period and hence operated to bar his receipt of unemployment benefits and barred him from filing a valid claim until September 20, 1958.

The claimant contends that the payment he received on August 15, 1958, was not wages with respect to the period August 15 through September 19, 1958; that he was 'unemployed' during the aforesaid period; that, being unemployed, he could file a valid claim on August 18, 1958; and that, having met the statutory requirements of being able to work and available for work, and having sought work during the disputed period through September 14, 1958, he was eligible for benefits.

The employer has not contended that the claimant was unable to work, or was unavailable for work, or that he did not seek work during the period August 18 through September 19, 1958, except as the lump sum payment, if considered as a continuation of employment, might be deemed to render him 'unavailable.'

If this were a simple case of permanent separation from work with the employer, accompanied by a lump sum payment of dismissal wages, the precedents of this Board would constrain us to hold that the decision of the Appeal Tribunal, which relied on those precedents, should be affirmed. It has been well-established by the decisions of the courts of this State, as well as by the precedent decisions of this Board, that real 'dismissal wages' or 'severance pay' do not bar receipt of unemployment benefits after the termination of employment.

The collective bargaining agreement involved in this case, however, contains provisions which, on the surface at least, make the payment to the claimant appear as something other than true dismissal wages. First, by the terms of the contract, the payment is not called 'dismissal wages' or by one of the similar terms com-

monly used to denote a payment made at the time of severance of an employer-employee relationship. In the agreement, the payment is referred to as a 'lay-off allowance,' with the implication that it is not quite the same as severance pay. The fact that the employee retains rights of recall for two years, in accordance with seniority, lends support to the implication that the separation is not final.

It is true that the lay-off in this case was for an indefinite period, without date of recall, and that the employer, in reporting the separation, chose to characterize it as 'permanent' although there was a choice between that designation and 'temporary.' The force of the original designation is somewhat weakened by the testimony of the employer's witnesses, who stated that the designation of the lay-off as 'permanent' was erroneous. It is quite clear, however, that that testimony is based on the rationalization that, since the claimant had certain rights of recall, the separation could not be considered permanent. We conclude that the separation was in fact permanent at the time it occurred, with no obligation upon the employer to recall the claimant unless, an increase in the working force becoming necessary, the claimant was entitled to recall because of his seniority. Once two years had elapsed, there would be no obligation upon the employer to recall the claimant under any circumstances.

Upon receipt of the lay-off allowance, the claimant was free to accept new work. He was not required to perform any service for the employer or to hold himself in readiness to perform services. If he obtained and remained at other work, he was not required to disgorge any part of the lay-off allowance. If recalled to work, he could return or not, as suited him. If he refused to return, there was no obligation on his part to refund any part of the lay-off allowance. It is unnecessary at this point to consider the effect of such refusal upon the claimant's right to unemployment benefits, since there appears to have been no such refusal.

On the other hand, if the claimant was recalled to work, and returned, he was required, under the terms of the agreement, to repay to the employer that part of the lay-off allowance which exceeded the equivalent of his regular wages for the number of weeks of lay-off elapsed to the date of work resumption.

The provisions of the agreement make it appear, superficially, that the employer has paid the claimant 'wages' for the period of lay-off. It is to be observed, however, that if the worker receives as lay-off allowance the equivalent of five weeks' pay, that is the limit of the payment, even though he may remain laid off much longer than five weeks. The question well may be raised as to why, if the payment is a continuation of wages during a period of nonwork, the employer limits it to a shorter period.

The reason for the limitation appears in the agreement. The amount of lay-off allowance is determined by the length of previous service. The payment represents a contractual right which becomes vested as the term of service lengthens. It has all the earmarks of 'severance pay' or 'dismissal pay,' which even if not given without a string attached (the required repayment of the 'unused' portion on recall), is to all intents and purposes an advance of dismissal pay against the date of ultimate permanent dismissal. That portion of the allowance which is not refunded upon recall is not a payment by the employer of wages. It reduces by that amount the vested reserve of severance pay which the employee has built up by his service. In a very practical sense, the employer advances to the claimant something to which the claimant would be entitled at a later date if it were not consumed now.

It is true that the right of the worker to the lay-off allowance is not absolute. He builds it by service, but it may be withheld if he is discharged for cause, and presumably if he quits of his own accord. Hence, it is not 'wages earned,' since wages earned by a worker must be paid, regardless of the reason for termination of his employment. For that reason, we do not agree with the claimant's contention that the lay-off allowance represents 'wages earned in the past' or 'wages earned during the period of employment.'

It is necessary to develop new definitions rather than to attempt to tailor recently-developed concepts to fit the procrustean bed of those already existing and appropriate to other situations. Any attempt to explain these new concepts in terms of the existing statutory definitions of wages is likely to bring about end results in which we are faced by two completely irreconcilable conclusions. 'Dismissal wages,' a term which includes the 'lay-off allowance' here considered, are payments made as 'terminal compensation measured by the service given during the subsistence of the contract—payable on discharge from the employment, not induced by misconduct according to the prescribed formula, a means of recompense for economic exigencies and privations and detriments resulting from the permanent separation of the employee from service for no fault of his own. In a real sense it is remuneration for the service rendered during the period covered by the agreement. It is not unemployment, which has reference merely to the period of unemployment and the actual wage loss.' *Owens Press Publishing Co.,* 20 *N. J.* 537 (1956). See also *Hawkins, Dismissal Compensation, Princeton University Press,* 1940. ,

We agree that dismissal compensation is 'remuneration for the service rendered during the period covered by the agreement' with the reservation that, in so characterizing it, the payment is not 'wages' for each period. It is merely compensation for the loss of the job, measured by length of service, because experience has

shown that, in general, the longer the service with one employer the more difficult it is for the worker to make a satisfactory adjustment. If it is not such in fact, it comes very close to being an indemnity for the loss of the job.

The lay-off allowance granted the claimant herein was dismissal wages, regardless of the descriptive terms used. It was not wages for the period August 15 through September 19, 1958. The claimant was not continued 'in employment' during that period. His claim of August 18, 1958, was valid. He was eligible for unemployment compensation benefits.

Decision:

The claim of August 18, 1958, was valid.

The claimant was eligible for benefits from August 18 through September 14, 1958.

The decision of the Appeal Tribunal (ATJ–12891–Inv.) is affirmed."

We know of no prior decision by any court of this State on the effect of "dismissal wages" or "severance pay" on eligibility for unemployment compensation benefits. The weight of authority elsewhere, in states having statutory provisions like those of New Jersey, holds that such payments are not a bar, see 25 *A. L. R.* 2d 1070, and we are in accord. The nature of the payment in this case is sufficiently akin that it should be similarly construed.

Affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.