## No. 42,513

SOUTHWESTERN BELL TELEPHONE COMPANY, a Corporation, *Appellant*, v. EMPLOYMENT SECURITY BOARD OF REVIEW OF THE STATE OF KANSAS, GWENDOLYN J. PRICE, EMMA J. JOHNSTON, BETTY JANE MERRIMAN, NANCY ROSE THOMASON and ALEDA HAWKINS, *Appellees.*

(371 P. 2d 134)

Opinion filed May 5, 1962.

*William A. Gray,* of Topeka, argued the cause, and was on the briefs for Appellant.

*Lynn D. Smith,* of Topeka, argued the cause, and *Joseph Payne,* of Kansas City, was with him on the briefs for Appellee, Employment Security Board of Review of the State of Kansas. *Robert C. Eckhardt,* of Houston, Texas, argued the cause, and *Jack A. Quinlan,* of Topeka, was with him on the briefs for Individual Appellees. Of Counsel: *Charles V. Koons,* Washington, D. C.

The opinion of the court was delivered by

FATZER, J.: This appeal involves the interpretation of the Employment Security Law (G. S. 1949, 44-701, *et seq.,* as amended) as to whether the five individual appellee-claimants were "unemployed" as that term is defined in G. S. 1961 Supp., 44-703(*m*), for the weeks for which they claimed unemployment compensation benefits.

Unless otherwise designated, all subsequent reference to the Employment Security Law found in G. S. 1949, 44-701, *et seq.,* as amended, is to G. S. 1961 Supplement.

The facts are not in dispute. Services of the five employees were terminated on November 14, 1959, without fault on their part when the telephone exchange at Coffeyville was converted from manual equipment to dial. When conversion occurred, there was not enough work in the exchange to warrant retaining any of them in the service of the company.

The collective bargaining agreement then in effect between the company and the Communication Workers of America, of which the claimants were members, provided for payment of a termination allowance to persons laid off or retired, payable in a lump sum upon termination, based upon wage history and the period of employment. The employees here involved received two or three weeks of termination allowance based upon the formula of the agreement. Provision was also made for mitigation or deferment of a part of the employer's obligation if it re-employed a person within a lesser number of weeks than that number which measured the termination allowance, but the terminated person was not on standby status and was to treat the allowance as absolute and final.

Upon being terminated, the employees filed individual claims for unemployment compensation benefits (44-709 [*a*]), which were consolidated for hearing before an examiner (44-709 [*b*]) who found that each claimant was eligible for unemployment benefits irrespective of the payment of a termination allowance. Following

statutory procedure, the company appealed (44-709 [d] [f]) and the claims were affirmed by the examiner and by the Employment Security Board of Review. Upon judicial review (44-709 [h]), the district court adopted the findings of fact and conclusions of law of the referee and the board, and rendered judgment that the termination allowance paid to each of the claimants was paid for past services rendered and not with respect to the weeks subsequent to termination of employment and that no wages were payable to claimants with respect to the weeks following their termination for which unemployment compensation was claimed. The appeal is from the judgment finding each of the claimants eligible for unemployment compensation benefits.

The company contends that under the agreement and the law, an employee may not receive both a termination allowance and unemployment benefits for the period following termination equal to the number of weeks upon which the termination payment was computed. Citing one case as an example, Gwendolyn Price received an equivalent of three weeks wages in termination allowance; the company contends she cannot lawfully receive three weeks of unemployment compensation benefits for the *three weeks following termination.*

The individual appellees and the Employment Security Board of Review contend that since the termination allowances paid to the claimants were computed on a past service base and paid in a lump sum, there is no logical way by which such payments may be said to have been made "with respect to" any specific number of weeks following termination; that the claimants were unemployed following termination, and that they were entitled to unemployment compensation benefits.

The condition precedent to eligibility under the Employment Security Law is that a claimant be "unemployed." That term is defined in 44-703(m) as follows:

"An individual shall be deemed 'unemployed' with respect to any week during which he performs no services and with respect to which no wages are payable to him. . . ."

The terms "performs no services" and "respect to which no wages are payable" are used in the conjunctive, and to be eligible for benefits both conditions must exist. The terms are not to be confused; they mean separate things with respect to the application of the statute.

The parties are agreed that the claimants performed no services for the company following their termination on November 14, 1959; that they were free to locate work elsewhere, but they had no employment during subsequent weeks. They are also agreed that the lump-sum payments received by the claimants as "termination allowances" were wages as defined in 44-703 (*o*). Thus, it is clear the claimants met the first part of the conjunctive requirement, and they met the second part and were entitled to full benefits, if the termination allowances were not wages "with respect to" the weeks following termination for which unemployment compensation is claimed.

In support of its contention that it should not be compelled to provide duplicate benefits to the claimants, the company points out that both unemployment compensation benefits and termination allowances are financed by the company, and it bases its argument upon two premises. First, it was the intent of the contracting parties that, as manifested by the terms of the agreement, the termination allowances were to forestall "economic insecurity" which were to be in lieu of unemployment benefits "with respect to" the number of weeks upon which the termination allowances were calculated, and that so long as the termination pay mitigated against the "crushing forces" of unemployment, such allowances were to be considered as wages earned in the past to be enjoyed in the future, when the contractual conditions precedent had been met, although conceding that its agreement with the union made no allocation of wages (termination allowances) to any specific week, either before or after termination, and second, that the statute itself, and the legislative policy which produced its enactment, does not establish, nor did it intend to establish, a principle that the unemployed should receive a "bonus" for being terminated, or receive double payments or treatment superior to those who are still retained in service; that the statute is best served by a construction which does not permit dual benefits, and to so hold, would discriminate between an employer who provides a termination allowance by compelling duplicate payments, while other employers who do not provide for such an allowance would only be required to make a single payment, and that the overall effect of sustaining the judgment of the district court would be to grant a windfall to the terminated employees, and produce an inequitable and unjust penalty against the company.

It must be borne in mind that in order to receive a termination allowance, definite services must have been performed. In no sense of the word is a termination allowance a mere gratuity. The prerequisite to qualifying for such an allowance is the performance of services, which entails regular employment, for a definite number of years, and so forth, all of which were provided for in the employees' contractual rights to receive such payments. Hence, we inquire: Does the agreement show any specific intent by the parties to avoid payment of duplicate benefits in the form of termination allowances and unemployment compensation benefits? The company contends that dual benefits were not contemplated by reason of the fact that had such an unusual result been expected, the agreement would have expressly provided that such payments would be permissible, but in the absence of such stipulation, the reasonable interpretation of the agreement is that neither of the parties contemplated double payments; further, that the agreement provided if an employee received a termination allowance and was then rehired and the number of weeks since the date of layoff was less than the number of weeks upon which the allowance was based, the excess must be returned to the company; therefore, the agreement clearly contemplated that the termination allowances were "with respect to" the time following termination.

We are of the opinion the company's contentions cannot be sustained. There is a distinction to be made between the status of an employee who is terminated and then rehired and is required to remit the excess of his termination allowance, and one who is terminated by a severance of the employer-employee relationship and makes claim for unemployment compensation benefits. The former is governed by the private contractual rights of the parties, and the latter is governed by the provisions of the statute. An eligible individual claiming benefits under the statute is entitled to a liberal interpretation of the law, *and the right to receive such benefits is determined by the provisions of the statute. (Erickson v. General Motors Corporation,* 177 Kan. 90, 276 P. 2d 376; *Clark v. Board of Review Employment Security Division,* 187 Kan. 695, 698, 359 P. 2d 856.) Furthermore, need has not been made a prerequisite to eligibility (44-705), particularly with respect to a terminated employee's former pay status. It has been held that double payment voluntarily made by an employer is not against public policy and does not militate against the scheme and plan of unemployment

compensation. (*Meakins v. Huiet*, 100 Ga. App. 557, 112 S. E. 2d 167.) The argument that to allow the claimants to receive benefits under these circumstances is to penalize the company by imposing a double liability under the agreement, is one which more properly should be addressed to the legislature than to the court. (*Ackerson v. Western Union Telegraph Co.*, 234 Minn. 271, 48 N. W. 2d 338, 25 A. L. R. 2d 1063.)

Nor are we impressed with the claim that because the agreement did not expressly provide that dual payments would be permissible, the reasonable inference in the absence of such stipulation was that neither of the parties contemplated double payment. If the agreement intended to avoid duplicity of payment, it would seem reasonable that it contain express provisions as to the allocation of the termination pay and for the continuation of the employer-employee relationship, in some form, during the period such pay was being allocated to weeks following termination. Assuming it was permissible under the statute for the company to enter into an agreement which contained contractual language directing that termination allowances be applied to weeks after termination and designating the weeks to which they shall be applied, the agreement here involved fails completely to make such provisions.

In the absence of such provisions it may not be presumed that the contracting parties meant to pay wages for no services, and allocate such payments to a period *after* termination. Generally speaking, wages are tied to the week of work and not to the week in which they are paid. In order to associate pay with specific weeks, there must be some connection between the two. The termination allowances here involved were in no way related to or dependent upon the claimants' employment status after termination. Under the company's own contention, there was no allocation of wages to any specific weeks other than an arbitrary one which it selected as being the number of weeks immediately after termination equivalent to the number of weeks upon which the total amount of termination allowance was based.

In view of the foregoing, we conclude the lump-sum payments that the claimants received were payable "with respect to" the period before their employment ceased. The very right to termination allowances is predicated on the services of a regular employee being "terminated." That is, the employer-employee relationship has to end before one can qualify for a termination allowance, and

in the instant case, the claimants, not being rehired, were "unemployed" after they were terminated on November 14, 1959. All of the factors that went into the computation by which the amounts were fixed related to what had happened in the past. All were retrospective. The payments were not fixed with a view to the actual or probable duration of claimants' unemployment; they would not have been diminished if the claimants had found jobs the next day, and they would not have been increased no matter how long the claimants remained unemployed. Rather, the amounts were fixed on the basis of one week's pay for each completed year of net credited service as employees, and such amounts were paid only because the claimants' past records were approved by the company.

It is our opinion that the termination allowances received correlated with the claimant's past performances and not with their future conduct or needs. They were based wholly upon, and thus were payable "with respect to" the period before the claimants' employment terminated and not any period thereafter. We hold, therefore, that the claimants were "unemployed" as that term is used in 44-703(*m*) for all weeks for which they claimed unemployment compensation benefits.

The weight of authority in the United States supports the conclusion just announced. See *Meakins v. Huiet*, supra; *Ackerson v. Western Union Telegraph Co.*, supra; *Western Electric Co. v. Hussey*, 35 N. J. 250, 172 A. 2d 645; *Western Union Tel. Co. v. Texas Employment Com'n* (Tex.) 243 S. W. 2d 217, and *The Kroger Co. v. Blumenthal*, 13 Ill. 2d 222, 148 N. E. 2d 734. Where a claimant is disqualified for dismissal payments or termination allowances, such is done by specific language in the statute in nearly all instances. (Arkansas Statutes 1947 Annotated, § 81-1106 [f]; Iowa Code Annotated, § 96.5 5a; Revised Statutes of Maine, Ch. 29, § 15 V. A.; Revised Codes of Montana, § 87-106 [e] [1]; Revised Statutes of Nebraska, § 48-628 [e].) See, also, *Kalen v. Director of the Division of Employment Security*, 334 Mass. 503, 136 N. E. 2d 257, and *Globe-Democrat Pub. Co. v. Industrial Commission*, (Mo.) 301 S. W. 2d 846.

The company cites and relies primarily upon *Bradshaw v. California Emp. Stab. Com.*, 46 C. 2d 608, 297 P. 2d 970, and *Carter v. Board of Review Under Okl. Emp. Sec. Act*, (Okla.) 323 P. 2d 362. No attempt will be made to analyze those cases since they represent the minority view on the question. The case of *Erickson v. General*

*Motors Corporation,* supra, held that "holiday pay" was wages which was "payable to" the claimant "with respect to" the week ending December 29, 1951, but there the claimants remained in the employment of the company. The company here suggests that all that need be done to apply the Erickson case to the instant case is to substitute the word "termination" for "holiday" and the result would be as it urges. We do not agree. It is obvious the two situations are not comparable.

But, there is another and compelling reason why the judgment of the district court must be affirmed. When originally enacted in 1937 (Laws of 1937, Ch. 255, § 6 [*e*], [1], [2]) the statute provided, among other things, disqualifications for any week with respect to which the claimant had received remuneration in the form of (1) payment in lieu of notice; or so-called dismissal wages, and (2) for temporary partial disability under the Workmen's Compensation Law of any state or any similar law of the United States.

In 1941 the legislature (Laws of 1941, Ch. 264, § 4) removed that provision and subsequent thereto the Division of Unemployment Security held that termination allowances would not render claimants ineligible for benefits, and appropriate administrative directives were issued entitled "Benefit Operations Manual." The pertinent provision reads:

"911.33 Termination Pay. Such payments may be received by workers following separation from their employment. They are variously known as 'Severance Pay,' 'Termination Pay,' 'Separation Pay' or 'Pay in Lieu of Notice.' Since a condition for the receipt of such payments is a severance from employment, the employer-employee relationship has ended. Since the relationship is ended, we cannot consider that Termination Pay is assignable to any period following the date of separation. It cannot, therefore, affect Benefit eligibility for any period subsequent to the separation."

It has been repeatedly held that where statutory enactments or amendments thereto create a situation where official duties which must be performed which are not clearly defined or prescribed in detail, the operative interpretation given thereto by the officers and official boards whose duties are to carry the legislative policy into effect is helpful, and may be entitled to controlling significance, when the scope and limitations of such powers must be determined in judicial proceedings. (*Harrison v. Benefit Society,* 61 Kan. 134, 59 Pac. 266; *Cavlovic v. Baker et al.,* 118 Kan. 412, 415, 416, 234 Pac. 1009; *State, ex rel., v. State Highway Comm.,* 132 Kan. 327, 337, 295 Pac. 986.)

The judgment is affirmed.