Alva R. Balding et al., Appellants,

*v.*

Tennessee Department of Employment Security,
L. B. Jennings, and Wilson & Company, Appellees.

370 S. W. 2d 546.

(*Knoxville,* September Term, 1963.)

Opinion filed September 11, 1963.

Tanner & Thrasher, Chattanooga, Adair, Gold-
thwaite & Stanford, Atlanta, Ga., for appellants.

W. L. MOORE, Chief Counsel, Department of Employment Security, Nashville, NOONE, MOSELEY & NOONE, Chattanooga, for appellees.

MR. JUSTICE WHITE delivered the opinion of the Court.

This cause involves the claims for unemployment compensation benefits of former employees of Wilson & Company whose employment was terminated when that company closed its Chattanooga plant on September 30, 1960. On or about that date the appellants were paid severance pay in accordance with a contract then in force between United Packing House Workers of America and Wilson & Company. The amount paid, the number of weeks covered, and the identity of the persons paid are part of the record, of which it is unnecessary to make note.

The appellants then filed application for benefits under the Tennessee Employment Security Law, T.C.A. sec. 50-1301, et seq., as amended (Supp.1962).

An administrative decision by the Unemployment Compensation Division, approved the claims of appel-

lants subject to disqualification during the period severance payments were due. The decision was based on T.C.A. secs.. 50-1313, 1315 and 1324, as amended (Supp. 1962).

The Chief Appeals Referee affirmed this decision and made findings of fact. The Board of Review of the Tennessee State Department of Employment Security affirmed the Referee's decision and adopted his findings of fact.

On certiorari to the Chancery Court a final decree was entered dismissing the petition and affirming the findings and decision of the Board of Review and the Chief Appeals Referee.

The appellants have appealed to this Court and assigned errors.

■ The contract between appellants' collective bargaining agent, the union aforesaid, and the company provides for severance pay under 89.(A) of the contract then in effect, viz.: "Severance allowances shall be paid to employees having one (1) or more years of continuous service in accordance with the seniority provisions hereof who are permanently dropped from the service because of a reduction in forces arising out of the closing of a department or an entire plant * * *"

Sub-section (B) of 89 provides that severance allowances are not paid to employees with less than one year's continuous service; to employees laid off in gang reduction; in cases where employee was discharged for cause; in cases of voluntary resignation; and to employees who refuse an offer of employment by the company in another unit of its business.

The method of computing severance pay is also set out in the agreement. If the amount due is less than the equivalent of four weeks' pay, the same shall be paid in one lump sum. If the amount due is in excess of the equivalent of four weeks' pay, the same shall be paid in weekly installments of full wages until the total amount is exhausted. However, "the employee, at his option, may elect to receive such amount in a shorter period of time in one lump sum." It is also provided "in the event of death, any unpaid balance shall be paid to the employee's next of kin or legal heirs."

As to the facts of the case the parties seem to be in agreement as set out above. On the basis of these facts, the Referee, the Board of Review, and the Chancellor have ruled, as law, that the appellants' severance pay was allocable to the period next following their release. They further held that the appellants would be entitled to unemployment benefits only after a number of weeks had passed, determined by dividing the total severance pay of each individual by his regular pay for a forty-hour week at the time of his release.

These decisions were based upon the interpretation of the contract and the provisions of the Tennessee Employment Security Law, supra.

In general, they hold that to be entitled to unemployment benefits the appellants had to be "unemployed" for the weeks in question in terms of T.C.A. sec. 50-1313 and that they were not "unemployed" because they were disqualified by one or more of the provisions of T.C.A. sec. 50-1315 and/or sec. 50-1324.

T.C.A. sec. 50-1313 provides, by way of definition, that one is:

" 'unemployed" in any week during which he performs no services *and with respect to which* no wages are payable to him * * *. (emphasis supplied)

The appellees contend that the "severance pay" is "wages" as defined by T.C.A. sec. 50-1315:

" 'Wages' means all remuneration *paid for personal services* * * * 'wages' shall always include remuneration * * * if the employing unit for which such services are performed is liable for any federal tax * * * against which credit may be taken for contributions paid under this chapter * * *. (emphasis supplied)

They further contend that the fact that the appellants received these "wages" after the severance date necessarily disqualifies them for benefits until the time period for severance pay runs out. We do not agree.

"In the second section of the Unemployment Compensation Act the Legislature expressly declares that the purpose of the measure is 'the benefit of persons unemployed through no fault of their own.' And it is the province of the Court so to construe this Act as to effect its declared purpose." *Queener v. Magnet Mills, Inc.,* 179 Tenn. 416, 423, 167 S.W.2d 1, 4 (1942).

The key words of T.C.A. sec. 50-1313 are, as emphasized supra, "and with respect to which." In the words of the Louisiana Court of Appeals in a similar case:

"This case turns upon the interpretation of the words 'with respect to' as used in the above statutory provision. [the same as T.C.A. sec. 50-1313]. In other words, what was the severance pay for?" *George v. Brown,* 144 So.2d 140, 142 (1962).

The phrase relates logically to "week" and "personal services." It is admitted that the appellants, in the in-

stant case, performed no services during any *week* after the severance. In fact, the "severance pay" *is not* "with respect to" the performance of any additional personal services at any time. *It is* "with respect to" the number of years continuous satisfactory service with the company prior to the severance.

It is irrelevant whether "severance pay" is characterized as "wages" so long as it is "wages" paid "with respect to" personal services performed in the weeks and years prior to the severance.

The employment contract provides that the amount of "severance pay" is to be determined by multiplying a *number*, in weeks, based upon the number of years continuous service, times the individual's regular pay for forty hours of work at the time he is released.

The fact that the number is designated in weeks does not mean that these weeks were "with respect to" the period of time after the severance date. It is just a convenient method of computing the amount of severance pay. See *George v. Brown*, supra, 144 So.2d at 143.

The contract made the right to such severance pay contingent on conditions necessarily determined as of and prior to the severance date.

Initially, there was a condition precedent to the employee having any such right. (1) The employee had to have at least one year or more continuous service with the company and then he had a contingent right. This contingent right was subject to at least four conditions subsequent which could prevent its ever becoming a vested right. (A) The employee could be "laid off in gang reduction" or (B) "discharged for cause" or (C)

voluntarily resign, or (D) refuse an "offer of employment by the company" reasonably near the location of the present plant.

The right to severance pay became a vested right only if he was released from employment through no fault of his own without (A), (B), (C), or (D) occurring first.

Since, as noted supra, all of these conditions are necessarily determined as of or prior to the date of severance, it follows that the severance pay was paid "with respect to" personal services rendered in the weeks and years prior to that date.

Therefore, we hold that the appellants were "unemployed" as of the date of severance because in the terms of T.C.A. sec. 50-1313 they performed no "services" in any week after that date and were paid no "wages" with respect to any week after that date.

The Board of Review and the Chancellor considered *Meakins v. Huiet,* 100 Ga.App. 557, 112 S.E.2d 167 (1959) inapplicable to the instant case because the statute in Georgia contained at that time a provision which the Tennessee Legislature had removed in 1955. The provision stated that for purposes of that chapter "wages shall not include dismissal payments *which the employer is not legally required* to make."

The appellees contend that the removal of this provision indicate public policy which should control the decision in the instant case. There is no merit to this contention.

The obligation to make the severance payments became fixed as of the date of severance and thus, the employer

is legally required to make these payments. Therefore, the action of the Legislature with reference to this subsection would not affect the issues in the instant case.

Even if this action manifested legislative intent that "severance" payments be included in the term "wages," such construction would not change this decision. This is so because however these payments are characterized they are still paid "with respect to" weeks and personal services prior to the date of severance. It follows that appellants could not be disqualified under this sub-section.

The Meakins case, supra, involved a contract with the same union and even the same statute, except for the irrelevant difference noted supra. The very same issues were involved in that case. That court held that the former employees were not disqualified for benefits by reason of the severance payments.

The contention was made there, as in the instant case, that the severance payments were "wages in lieu of notice" so as to disqualify the appellants under the same provision as T.C.A. sec. 50-1324E(1). The Georgia Court ruled, as we must, that the contention is without merit because, as in the instant case, there clearly was no lack of notice. The Georgia Court ruled that eighteen days notice was enough and in the instant case there was a month's notice. 100 Ga.App. at 557, 112 S.E.2d 167.

The appellees contended there, as here, that to allow appellants both severance payments and unemployment benefits would be a double burden on the employer because the rates paid by the employer are based on the company's "experience" so that if these former employees collect unemployment benefits the rates so

charged would be adjusted upward in accordance with T.C.A. sec. 50-1328.

The court in *Meakins,* supra, 100 Ga.App. at 560, 112 S.E.2d at 170, gave a very impressive answer to this contention:

"The argument that the employer will be subjected to double payment is not in our opinion acceptable. If there were any subterfuge or imposition the answer might be different. Double payment voluntarily made by an employer is certainly not against public policy and does not militate against the scheme and plan of unemployment compensation. If employers wish to avoid the so-called double obligation all they have to do is to provide in the contract that the employment of the released employee does not end until the expiration of the time when the severance allowance would expire if paid monthly, and also provide in the contract that the severance allowance must be paid only by the month and that in case of the death or reemployment of the employee (by the former employer) the obligation to pay the remaining installments would cease."

We have been unable to find anything in our law which would prevent an employer and his employee, or someone acting on his behalf, from entering into a contract for the payment to such employee a sum of money upon the termination of his employment. Whether it be called severance pay, termination pay, and whether it be paid in one lump sum, or in weekly or monthly installments, is immaterial in our opinion.

■ There are very strong reasons why such payment should not serve as a disqualification for unemployment benefits. Need or actual indigency is not a requirement

for eligibility for unemployment compensation. Receipt of income from other sources is not disqualifying because the purpose of unemployment compensation is to supplement a person's resources during unemployment. The claimants here would have received severance pay under the contract even though employed in a new job immediately upon the closing of the plant.

There are many reasons for the inclusion of severance pay clauses in contracts which extend beyond an attempt to ease the employee's financial burden while seeking new employment. Some of these reasons are that severance pay is also intended as partial compensation for loss of seniority rights, loss of possible pension rights, and compensation for re-training or acquiring new skills in a new-found job. Further, it may be that an employee is required to move from one section of town to another, or even to a new city in order to find employment and then in such new-found employment he may start at lower pay than formerly enjoyed at his prior place of employment.

From the employer's viewpoint, severance pay clauses are included as a means of maintaining good will and keeping in their employment valuable employees who have become skillful in their particular fields of employment.

All of these factors strongly suggest that parties to the contract in question intended the severance pay clause to have no relation to the status of the employee after dismissal. In view of the terms of the contract in question we are of the opinion that there is no relation between eligibility for unemployment compensation and receipt

of severance pay. The amount of the severance pay was agreed upon by the employer and the employee as a part of their working contract.

Thus, we are compelled to reverse the action of the chancellor, and a decree will be entered in accordance with this opinion.