[S. F. No. 21698. In Bank. June 30, 1965.]

EDMUND C. POWELL et al., Plaintiffs and Appellants, v. CALIFORNIA DEPARTMENT OF EMPLOYMENT et al., Defendants and Appellants; CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD et al., Defendants and Respondents.

[S. F. No. 21699. In Bank. June 30, 1965.]

WALLACE R. BYRD et al., Plaintiffs and Appellants, v. CALIFORNIA DEPARTMENT OF EMPLOYMENT et al., Defendants and Appellants; CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD et al., Defendants and Respondents.

(Consolidated Cases.)

Charles P. Scully for Plaintiffs and Appellants.

Stanley Mosk and Thomas C. Lynch, Attorneys General, Clayton P. Roche and Walter J. Wiesner, Deputy Attorneys General, for Defendants and Appellants.

Jack D. Clevenger, Lewis & Foster, John V. Lewis, Flint & MacKay and Edwin Freston for Defendants and Respondents.

PEEK, J.—Petitioners in two consolidated cases appeal from orders denying their petitions for writs of mandate to compel payment of unemployment insurance benefits.

The Department of Employment initially rejected petitioners claims for benefits following its determination of their ineligibility, and the decisions were affirmed by the Unemployment Insurance Appeals Board. Thereafter the instant proceedings were commenced by petitioners pursuant to section 1094.5 of the Code of Civil Procedure,[1] and the department joined with petitioners both in the trial court and on this appeal in opposing its initial determination.

The two petitioners in the *Powell* case (S.F. 21698) had been employed by the respondent Oakland Tribune for 25 years in the case of one of them and 7½ years in the case of the other, and were placed in a standby status because of a reduction in the work force. The 15 petitioners in the *Byrd* case (S.F. 21699) had been employed by divisions of the Hearst Publishing Company, and their employment was terminated permanently by reason of the discontinuance of publication of the respondent Los Angeles Examiner. Each of the petitioners was covered by either "severance pay" or "dismissal pay" benefits under the terms of collective bargaining

---

[1]Section 1094.5 of the Code of Civil Procedure provides for the issuance of the writ of mandate for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a hearing wherein evidence is taken and discretion is vested in the administrative tribunal.

agreements, and in every instance the employer paid such benefits. Petitioners' applications for unemployment compensation are for periods immediately following terminations of their employment. These periods are claimed to overlap periods by which the severance or dismissal pay was measured, and the dispute herein goes to petitioners' eligibility to receive unemployment insurance compensation for the portion of the periods as to which they are claimed to overlap.

The governing statutory provisions are sections 1251 and 1252 of the Unemployment Insurance Code. Section 1251 provides: "Unemployment compensation benefits are payable from the Unemployment Fund to *unemployed* individuals who are eligible under this part." (Italics added.) Section 1252, in defining those who are unemployed, provides, in part: "An individual is 'unemployed' in any week during which he performs no services and with respect to which no wages are payable to him. . . . For the purpose of this section only the term 'wages' include any and all compensation for personal services whether performed as an employee or as an independent contractor."

In the context of the instant circumstances it is apparent that petitioners, during the periods in question, performed no services, and the critical determination thus becomes whether "with respect to" such period "no wages [were] payable to" them. This resolves itself further into the questions, first, whether severance or dismissal pay is "wages," and second, if so, whether it is payable "with respect to" specific weeks immediately following termination and which constitute the measure thereof.

The issues here presented were before this court in *Bradshaw* v. *California Emp. Stab. Com.* (1956) 46 Cal.2d 608 [297 P.2d 970]. In that case Bradshaw was discharged for reasons of economy by his newspaper employer. Pursuant to a collective bargaining agreement he was entitled to certain benefits including "dismissal pay" based upon his length of service which pay was determined to be equal to his salary for 41½ working days. Upon his application therefor the Department of Employment denied him unemployment insurance compensation for the first 41½ days following his dismissal. This court, in affirming the denial of a petition for writ of mandate under section 1094.5 of the Code of Civil Procedure, noted first that Bradshaw conceded that his dismissal pay constituted "wages," and stated at page 610: "The question then is whether dismissal payments are payable

'with respect to' a period before the employee's date of discharge or 'with respect to' a period after that date.''

As to the foregoing issue the court, depending heavily upon a declared policy to discourage the ''duplication of payments to a discharged employee,'' concluded at page 611 that ''Unemployment insurance was not intended to protect employees already protected for the same period by their private contracts.'' While it does not appear that *Bradshaw* may be cited in support of a direct holding that severance and dismissal pay constitute ''wages,'' the first issue presented herein, nevertheless such a holding may be implied from its language, and it must be deemed to have answered the second question posed in the instant case adversely to petitioners' claims, that is, that severance and dismissal payments are made with respect to a period of time immediately following such severance of or dismissal from employment.

Petitioners urge that dismissal or severance payments should not be considered as ''wages'' because, assertedly, such payments are not compensation for services but rather are partial compensation for the loss of anticipated future earnings, the present necessity to retain and acquire new skills, and the need to seek and acquire new jobs without seniority rights. (See *Ackerson* v. *Western Union Tel. Co.,* 234 Minn 271 [48 N.W.2d 338, 343, 25 A.L.R.2d 1063]; *Western Electric Co.* v. *Hussey,* 35 N.J. 250 [172 A.2d 645, 650-651]; *Balding* v. *Tennessee Department of Employment Sec.,* 212 Tenn. 517 [370 S.W.2d 546, 547 et seq.].) Petitioners also contend, *Bradshaw* notwithstanding, for the same reason that dismissal and severance payments are not ''wages,'' that such payments are not made ''with respect to'' *any* particular period of time although the amounts thereof are measured by a length of time, and that even such time measure is determined from services performed *prior* to dismissal or severance.

Petitioners would distinguish dismissal and severance pay from ''vacation'' and ''in lieu of notice'' pay, where such payments are intended as, or in lieu of continuing wages for a particular period following the termination of the performance of personal services. The latter payments have been held to disqualify an employee from claiming unemployment insurance compensation for the same period of time. (See *Shand* v. *California Emp. Stab. Com.,* 124 Cal.App.2d 54 [268 P.2d 193]; *Jones* v. *California Emp. Stab. Com.,* 120 Cal.App.2d 770 [262 P.2d 91].) The collective bargaining agreements in the instant case made provisions for vaca-

tion and in lieu of notice payments, and unemployment insurance compensation is not sought by petitioners for periods of time covered by such payments.

Contentions urged by petitioners would require that we reexamine and redetermine the issues presented in *Bradshaw*. However, that has been rendered unnecessary by a subsequent legislative declaration which, we are persuaded, sets aside the declared legislative intent upon which the decision in *Bradshaw* was made to turn. Contrary to the holding in that case that "unemployment insurance was not intended" to render aid to employees during periods covered by their private contracts, the Legislature, in 1959, enacted section 1265 of the Unemployment Insurance Code, which provides in pertinent part: "Notwithstanding any other provisions of this division [which includes sections 1251 and 1252], payments to an individual under a plan . . . established by an employer . . . for the purpose of supplementing unemployment compensation benefits shall not be construed to be wages . . . and benefits . . . shall not be denied . . . because of the receipt of payments under such . . . plans. This amendment is hereby declared to be merely a clarification of the original intention of the Legislature and is not a substantive change, and is in conformity with the existing administrative interpretation of the law."

The declaration of legislative intent contained in section 1265 obviously is sufficiently broad to include within its language the dismissal and severance payments in the instant cases. But it is contended that section 1265 is to be confined to particular types of payments which are expressly declared in the governing instrument to be "supplemental" to unemployment compensation benefits. Such contention follows from a history which shows that the section was enacted immediately after a contrary trial court ruling involving an employment contract containing an express declaration that the purpose of the provision was to "supplement state system unemployment benefits . . . and not to replace or duplicate them." The payments were referred to throughout the document as "supplemental unemployment payments" and not as dismissal or severance pay. The Unemployment Insurance Appeals Board held that the payments did not render the discharged employee ineligible for unemployment insurance compensation for the period immediately following his discharge. However, in a decision from which no appeal was taken (*Morris Furniture Mfg. Co., Inc. v. California Unem-*

*ployment Insurance Appeals Board,* Los Angeles Superior Court No. 695196), the trial court issued its writ of mandate setting aside the award of compensation.

Unquestionably the supplementary unemployment benefit plan falls within the scope of section 1265, but it does not necessarily follow that *only* such plans are covered by that section. The section states that it is a declaration of intent consistent with the then current administrative practices. While there was some little confusion in administrative practices immediately before and at the time of the enactment of section 1265, much of such practice was to the effect that dismissal and severance type payments were not deemed to be ''wages,'' in spite of implications otherwise in *Bradshaw.* Thus, beginning in 1956, the Attorney General ruled upon several plans wherein an employee received benefits upon his involuntary termination of employment. In 27 Ops. Cal. Atty. Gen. 71 (Feb. 10, 1956) the Attorney General ruled that benefits were not wages where there was no vested certainty that a given employee would receive a benefit. The Attorney General was persuaded to this conclusion by prior rulings of the appeals board to the effect that since employees ''had no assurance that they would receive payments'' the payments when received were ''not strictly renumeration for services'' and therefore were not wages. (Appeals Board Benefit Decision No. 5585, p. 6.)

Following *Bradshaw* the Attorney General again ruled that where no rights to benefits vested in an employee, payments could not be wages. (28 Ops. Cal. Atty. Gen. 40 (July 18, 1956).) He distinguished *Bradshaw* on the ground that the question of what constituted ''wages'' was not in issue in that case. And in the *Morris* case, immediately prior to the enactment of section 1265, the appeals board held payments were not wages in reliance on the Attorney General's theory of nonvested-interest. The Assembly Interim Committee Reports (Report on Supplemental Unemployment Benefit Plans and Related Programs, Assembly Interim Committee Reports, 1955-1957, No. 12, Vol. 15.) contain an analysis of the Attorney General's opinions and test.

From the foregoing it must be apparent that the Legislature was aware of the practices of the administrative agencies as advised by the Attorney General. The nonvested-interest test announced by the Attorney General and then relied upon by the appeals board does not distinguish between the so-called supplemental unemployment benefit plans and severance or

dismissal pay, although a distinction is readily apparent in the case of vacation and in lieu of notice payments.

In essence, respondents would draw a material distinction between the supplemental unemployment benefit plans and severance or dismissal pay on the basis of the label by which the additional benefits are described in the documents which provide for the benefits. But there would appear to be no reason why collective bargaining agreements which now provide for severance or dismissal pay could not be modified to give such payments a different label and concededly qualify the discharged employee for his full unemployment insurance benefits without doing violence to the integrity of the Unemployment Insurance Fund or any party involved. To resolve the issue according to the label attached, as respondents urge, would accord greater weight to form than to substance and such a resolution is not in keeping with the obvious legislative intent expressed in section 1265 to broaden the coverage of unemployment insurance benefits.

For the foregoing reasons we are persuaded to the conclusion that in enacting section 1265 of the Unemployment Insurance Code the Legislature intended to exclude dismissal and severance pay as ''wages'' within the meaning of that code, and that petitioners are entitled to their unemployment compensation benefits without the imposition of any limitation due to their receipt of such pay.

The order denying the petitions are reversed and the trial court is directed to issue the writ as prayed in each case.

Traynor, C. J., Peters, J., Tobriner, J., Burke, J., and Schauer, J.,* concurred.

McCOMB, J.—I dissent. I would deny the writ for the reasons expressed by Mr. Justice Bray in the opinion prepared by him for the District Court of Appeal in *Powell* v. *California Department of Employment* (Cal.App.) 41 Cal. Rptr. 858.

The petition of respondent Hearst Publishing Company for a rehearing in S.F. No. 21699 was denied July 28, 1965. Bray, J. pro. tem.,† did not participate therein. McComb, J., was of the opinion that the petition should be granted.

---

\* Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

† Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.