820 A.2d 666

HELEN T. DARBY, CLAIMANT–APPELLANT, v. BOARD
OF REVIEW, RESPONDENT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted March 11, 2003—Decided April 22, 2003.

Before Judges STERN, COBURN and ALLEY.

*Franklyn C. Steinberg, III, and Associates,* attorneys for appellant (*Patricia R. Carley,* on the brief).

·*Peter C. Harvey,* Acting Attorney General, attorney for respondent (*Michael J. Haas,* Assistant Attorney General, of counsel; *John C. Turi,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

STERN, P.J.A.D.

Helen Darby (hereinafter "claimant") appeals from the final administrative determination of the Board of Review, which upheld the denial of her claim for unemployment benefits for the period commencing March 25, 2001. We affirm.

The difficult issue raised by this appeal flows from an agreement reached by the claimant and her employer. The agreement was embodied in a letter sent to claimant by the employer's Director of Human Resources. It was dated January 4, 2001, but noted as "revised" on both February 5, 2001, and February 21, 2001. On February 22, 2001, claimant executed the agreement by signing:

> I acknowledge that I have read, understand and agree to all the terms of this Agreement and Release and further acknowledge that I have had the opportunity to review it with an attorney.

The letter agreement provides that claimant's "employment relationship that has existed will end effective March 23, 2001," but "that as consideration," she "will continue to be on active payroll status from March 26, 2001 through May 31, 2002, in lieu of separation pay." Her "separation date" was acknowledged to be May 31, 2002. Under the agreement, claimant was to receive a

gross amount of $69,511.30 in bi-weekly payments of $2,242.30. Her "group health insurance" was to be continued under COBRA for eighteen months after the "separation date or until the attainment of age 65, whichever occurs first." The agreement required claimant to continue to honor her "confidential duties under [the] Employee Secrecy Agreement" she executed in 1994, and embodied the settlement of any possible claim she might have against the employer resulting from her termination about fourteen months before she was eligible for retirement and a full pension in May 2002. Accordingly, the letter contained a release of the employer and affiliate companies of all claims and "specifically ... any claims of illegal discrimination or retaliation ... breach of contract, breach of promise, wrongful discharge [and] unjust dismissal. . . ."

A portion of the hearing before the Appeal Tribunal was not recorded, but when the tape was turned back on, the hearing officer noted, without dispute, what the evidence revealed. Claimant worked for respondent for twenty-three years, and "[s]he would have been entitled to two weeks' earnings for every year that she worked if she accepted or been laid off and given that severance pay," together with five weeks vacation time, for a total of fifty-one weeks of pay under the severance package offered to other employees laid off at the same time. There may have been some dispute about additional entitlements. However, it was undisputed, as the appeals examiner noted during the hearing, that "Ms. Darby would receive the same amount [of] gross earnings under this agreement as she was [earning] when she went to work everyday and performed her job duty." Moreover, she did not pay for medical benefits while on the payroll, unlike the persons who were severed.

On the employer's appeal from a Deputy Director's determination that claimant was entitled to benefits, the Appeal Tribunal held that the claim was "invalid" and that she was "ineligible for benefits ... as she [was] receiving continuation wages in accor-

dance with *N.J.A.C.* 12:17–8.8(a)." [1] The Board of Review affirmed on the record made by the Appeal Tribunal.

Claimant argues that she is not disqualified from the receipt of employment compensation because she was being paid for past services, not ongoing employment. The point is colorable because "[t]he receipt of *severance or separation pay in periodic payments* or in a lump sum *shall not be a bar to eligibility* for unemployment benefits." *N.J.A.C.* 12:17–8.7(b) (emphasis added), and, under *N.J.A.C.* 12:17–8.7(a), " 'severance or separation pay' shall mean any lump sum payment or periodic payment made to an individual by an employer at termination under contract or obligation or by custom which is based on past services performed for the employer." Pursuant to the agreement negotiated in this case, claimant was carried on respondent's books from March 23, 2001, to her "separation date" of May 31, 2002, so that she qualified for an age and service pension at age fifty-five. Moreover, as we have noted, during this period, she did not have to pay COBRA, as the severed employees did, and she continued to receive the equivalent of her salary as well as medical and dental benefits. Claimant also continued to accrue time towards her pension.[2]

In essence, claimant had the best of both worlds: she was no longer in an "employment relationship" but was on "active payroll

---

[1] We will hereinafter quote the regulation in full during our analysis of the issue before us.

[2] The Appeal Tribunal found that, between March 26, 2001 and May 31, 2002, "the claimant continued to pay her 401K program and she received the same benefits had she continued working." Claimant does not expressly challenge this finding, and it appears that the time and contributions were added to claimant's pension, given her acknowledged receipt of "the same amount of gross earnings ... as she was [earning] when she went to work everyday." Moreover, although the purpose of the agreement was "to get her to retirement" at age fifty-five, not to obtain service credits, according to the employer's testimony, "[s]he's been earning retirement benefits or accruing towards retirement vesting."

status." She could even find work elsewhere and earn additional income, subject to certain restrictions contained in the agreement.

*N.J.A.C.* 12:17–8.8(a), on which the Appeal Tribunal and Board of Review relied, provides:

> An employer may elect to continue wage or salary payments and forego the services normally performed by the employee through the date of termination provided for by contract or other agreement. A claim filed by an individual receiving such payments shall be invalid and he or she shall be ineligible for benefits through the date of termination of contract or other agreement. However, salary continuation payments may be used to establish a claim for benefits after the period for which the individual has received such payments.

We do not believe that claimant is entitled to unemployment benefits in these circumstances or that the unemployment compensation system was designed to benefit someone who, though formally being paid for work previously performed or for "past services," is continued on "active payroll status" and receives his or her same pay and benefits in order to achieve a vested pension.

This case is unlike *Western Elec. Co. v. Hussey*, 35 *N.J.* 250, 251, 172 *A.2d* 645 (1961), in which the receipt of "a 'lay-off allowance' equivalent to five weeks wages under the terms of a collective bargaining agreement" did not disqualify the claimant from unemployment compensation benefits "for the five weeks immediately following the layoff." *Ibid.* Hussey considered the wording of a particular collective bargaining agreement and did not refer to the wording of the governing statute at the time. Moreover, *Hussey* was decided before the adoption of the Administrative Procedure Act, *N.J.S.A.* 52:14B 1 et seq., and there were no controlling regulations. *See also Butler v. Bakelite Co.*, 32 *N.J.* 154, 158, 160 *A.2d* 36 (1960) (claimant entitled to unemployment benefits when injured within two weeks of "lay off," notwithstanding he "was entitled to a two weeks vacation with pay at the time of the lay off").

In this case claimant's "separation date" was not until May 31, 2002, and we conclude that the Board of Review's interpretation of its regulation, *N.J.A.C.* 12:17–8.8, is not arbitrary, unreasonable or inconsistent with either the statute which governs

"disqualification for benefits," *N.J.S.A.* 43:21–5, or the regulation which permits unemployment benefits to one receiving "severance or separation pay." *N.J.A.C.* 12:17–8.7. After all, "[t]he purpose of the [Unemployment Compensation] Act is to provide some income for the worker earning nothing, because he is out of work through no fault or act of his own." *Brady v. Board of Review,* 152 *N.J.* 197, 212, 704 *A.*2d 547 (1997), quoting *Yardville Supply Co. v. Board of Review,* 114 *N.J.* 371, 375, 554 *A.*2d 1337 (1989) (quoting cases; part of sentence de-emphasized). In any event, we find no basis for disturbing the determination of the Board of Review given the fact that that claimant was disqualified for benefits for the period prior to her "separation date."

Affirmed.